The STATE of Wyoming, Appellant
(Plaintiff below),

v.

Charles H. STERN, Appellee
(Defendant below).

No. 4319.

Supreme Court of Wyoming.

Sept. 16, 1974.

James N. Wolfe, County and Pros. Atty., Sheridan, Clarence A. Brimmer, Atty. Gen., Bert T. Ahlstrom, Jr., Asst. Atty. Gen., Cheyenne, for appellant.

Tom C. Toner of Redle, Yonkee & Arney, Sheridan, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice McCLINTOCK delivered the opinion of the Court.

The Sheridan County Attorney has presented bill of exceptions under the provisions of § 7–288 W.S.1957 asserting the district court of that county erred in holding § 6–130 W.S.1957, Cum.Supp.1973 [1]

---

1. As amended by ch. 143, S.L. of Wyoming 1973, the statute provides in pertinent part that "[w]hoever, at any time, *unlawfully breaks and enters,* or attempts to unlawfully break and enter, into any *locked or sealed* *dwelling house, office* * * * or other building whatsoever, is guilty of a misdemeanor, and shall be imprisoned in the county jail not more than one year or a fine of not more than $500 or both." [Emphasis

unconstitutional as being in violation of §§ 2, 6, 7, 14, and 15 of Article 1 of the Wyoming Constitution[2] and the eighth and fourteenth amendments of the Constitution of the United States.[3]

Information filed in the district court charged that Charles H. Stern did "unlawfully break and enter into a locked or sealed office building * * * against the peace and dignity of the State of Wyoming." Motion to dismiss the information was filed by defendant claiming that the statute violated the due process clause of the United States Constitution and Article 1, § 6 of the Wyoming Constitution because:

"(a) The statute's meaning is so uncertain, indefinite and vague that it fails to give fair warning of the conduct which it prohibits and

"(b) The statute is outside the scope of the state's police power because it makes innocent acts criminal even though the acts do not interfere with or threaten the public health, safety, morals or welfare."

The order dismissing the information found that the statute under attack violated the specified sections of the Wyoming and federal constitutions, but is not more specific in declaring in just what respects it is repugnant to those provisions. We gather from the record that the district judge was principally impressed with the argument that the statute was unconstitutionally vague under the sixth section of our Article 1 and the fourteenth amendment to the federal constitution. Both briefs submitted

herein argue the applicability of the two due process clauses. We shall therefore similarly confine this opinion.

■ We have said in Zancanelli v. Central Coal & Coke Co. (1918), 25 Wyo. 511, 173 P. 981, 983, that it is incumbent upon both counsel and the court, in claiming and declaring a statute unconstitutional, to point out the specific provisions of the Constitution claimed or declared to be violated by the legislative act or to which it is claimed to be repugnant, and in Johnson v. Schrader (Wyo.1973), 507 P.2d 814, 819 we reiterated the earlier declaration of this Court in Burton v. School District No. 19 (1934), 47 Wyo. 462, 38 P.2d 610, 612, that the "'duty to show an act to be in contravention of the Constitution is upon him who asserts that to be true.'"

■ In considering this appeal we have in mind, and without specific reference thereto shall attempt to dispose of the appeal consistently with, certain general principles applicable to determination of the constitutionality of statutes: That the plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary, Shaffer v. Davidson (Wyo.1968), 445 P.2d 13, 16; that where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not properly look for and impose another meaning, Town of Clearmont v. State Highway Commission (Wyo.1960), 357 P.2d 470, 475; that where legislative intent is discernible a court should give ef-

---

supplied.] This crime was first defined in ch. 6, § 1, S.L. of Wyoming, 1897 and amended in ch. 185, § 3, S.L. of Wyoming, 1957, to include an attempt to do the prohibited acts. The 1973 amendment reduced the offense from a felony punishable by 14 years imprisonment in the penitentiary.

2. Article 1, § 2 of the Wyoming Constitution provides: "In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal." "No person shall be deprived of life, liberty or property without due process of law." Id. § 6. "Absolute, arbitrary power over the lives, liberty and property of freemen exists no-

where in a republic, not even in the largest majority." Id. § 7. "* * * [C]ruel or unusual punishment [shall not] be inflicted." Id. § 14. "The penal code shall be framed on the humane principles of reformation and prevention." Id. § 15.

3. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Eighth amendment to the Constitution of the United States. "* * * [N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *." Id. fourteenth amendment.

fect to that intent, Woolley v. State Highway Commission (Wyo.1963), 387 P.2d 667, 673; that every law must be presumed to be constitutional, with all reasonable doubt resolved in its favor, State ex rel. Board of Commissioners of Laramie County v. Wright (1945), 62 Wyo. 112, 163 P.2d 190, 196; and that while generally speaking penal statutes are to be strictly construed, they need not be given overnarrow meanings in disregard of the obvious purpose of the legislative body, United States v. Bass (1971), 404 U.S. 336, 351, 92 S.Ct. 515, 30 L.Ed.2d 488.

As we construe Stern's argument, he contends that the statute is fatally defective in that it makes no distinction between conduct calculated to harm and that which is essentially innocent, citing City of Seattle v. Pullman (1973), 82 Wash.2d 794, 514 P.2d 1059, 1063, where it is said that "if the ordinance's prohibitions do not have a real and substantial relationship to the government's interest, the ordinance is unconstitutional". Comparing this act with the burglary and burglary tool statutes,[4] he points out that the latter clearly require that the proscribed entry or possession be with intent to steal or commit a felony before it is declared criminal while the former is completely silent as to the intention or purpose with which the breaking and entry are performed or attempted.

He then equates our statute with those which have been held invalid in other states, such as a statute making it a crime intentionally to damage a dwelling or other structure by explosion or setting fire, State v. Dennis (1969), 80 N.M. 262, 454 P.2d 276 and State v. Spino (1963), 61 Wash.2d 246, 377 P.2d 868, and a statute making it unlawful for any person under twenty-one to carry or have in his possession in any public place any knife or sharp pointed instrument which may be used for cutting or puncturing, People v. Munoz (1961), 9 N. Y.2d 51, 211 N.Y.S.2d 146, 172 N.E.2d 535. The reason given in these cases for holding the ordinance or statute void was that the statutory prohibition bore no relation to the public safety.

This legislative impotence to declare innocent acts criminal is in Stern's view all that is needed to establish the invalidity of the statute without regard to its vagueness, but in some of the authorities cited above and in the view of a majority of this Court, the two questions tend to merge. Interpreted in one way the statute may be said not to condemn innocent acts, while construed in another way it may. Apparently conceding that only in the public welfare area[5] may a statute which condemns innocent acts be held proper, the State contends that, properly construed, the statute is clear and unambiguous and does not condemn innocent acts. To reach this result, however, it is argued that the statute is to be interpreted as requiring the existence of an evil intent, sometimes known

4. Section 6–129 W.S.1957 provides in pertinent part: "*Burglary generally.*—(A) Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession *and with intent to steal or commit a felony therein* may be imprisoned not more than fourteen (14) years * * *." [Emphasis supplied.] Section 6–131 W.S.1957 provides in pertinent part: "*Possession of burglary tools.*—If any person shall be found having upon him or her any bolt cutters, pick lock * * * [listing many instruments] *with intent feloniously to break and enter* into any dwelling house, store * * * containing valuable property, or shall be found in any of the aforesaid buildings *with intent to steal* any goods and chattels, every such person so offending shall, on conviction, be punished by confinement in the penitentiary for a term not exceeding ten (10) years." [Emphasis supplied.]

5. Without going into an extensive discussion of the matter, there does seem to be a judicially approved class of statutes where it is considered that the public welfare is so important that the act itself, without consideration of the intent with which it is done, must be condemned. In a note to Morissette v. United States, 342 U.S. 246, 262, n. 20, 72 S.Ct. 240, 96 L.Ed. 288, it is said that Sayre, Public Welfare Offenses, 33 Col.L.Rev. 55 cites and classifies a large number of cases and divides them into eight rough subdivisions, none of which appear or is claimed by either of the parties to cover the statute under attack.

as scienter and sometimes as mens rea. The State asks us to construe the word "unlawfully" as supplying both the requirement of knowledge and intentional act in the breaking and entry.

In accordance with the general principles first cited in this opinion, we would agree that if the statute is reasonably subject to the construction contended for by the State we should give full effect thereto, and that it is important to sustain the constitutionality of statutes wherever it is possible. However, a majority of this Court cannot follow that proposition to the point where by a process of construction we furnish to the statute language and purpose which has not been expressed by the legislature. In other words, we decline judicially to incorporate into the statute language that the legislature has omitted.[6]

■ We have no difficulty in concluding that in its definition of this offense of breaking and entry our legislature has advisedly and deliberately omitted any requirement that the act be done with the intent to steal or commit some felony within the building. Sections 6–129 and 6–131 W.S.1957, *supra,* n. 4, clearly condemn a breaking and entry, or entry alone without breaking, or merely being found in a building, if such entry or presence is with the intent to steal or commit a felony. If it was intended by the legislature that the existence of that intent was essential to constitute the defined crime under § 6–130, it would have been easy enough to include language to that effect, but such addition would have been redundant of what had already been the law with respect to those offenses for some thirty years. The contemporaneous reconsideration and amendment of all three of these statutes in 1957 in respects not presently bearing on our problem—but retaining the distinctive definitions of the offenses—serves to emphasize our belief that the legislature intended the three statutes to be different and that specific intent to steal or commit a felony was not a necessary ingredient of this particular offense.

Having concluded that such specific intent was deliberately omitted, we must next inquire to what extent we are justified in interpreting the statute as requiring some other, or general, evil intent. Stern suggests that the statute condemns not only the intentional breaking and entry of the building but also the accidental breaking and entry by a friendly visitor who gives his neighbor's door a tug sufficient to break a lightly locked door; that it makes a criminal of one occupying a motel who attempts to unlock the wrong door; that the purposeful but innocent act of breaking and entry by a worried neighbor who has not seen his friend for some time and fears he may be sick or unable to take care of himself will constitute a crime. We cannot reject these suggestions as frivolous and must agree that we could declare such acts as innocent and outside the provisions of the law only if we engage in a substantial amount of interpretation or construction of the law.

■ More specifically considering the situation confronting Stern, no trial was had and no record was made as to the facts of this so-called breaking and entry. However, colloquy of counsel and the court shown in the record discloses without dispute that the defendant was found asleep and in an apparent state of intoxication in the office claimed to have been broken and entered. There was no indication of a physical breaking of any lock or destruction of any barrier designed to prevent entry by unauthorized persons. Testimony at the preliminary hearing had indicated that while the main entrance door was locked a secondary door, located in

---

6. In doing this we decline to follow certain decisions cited by the State, principally State v. Berry (1966), 101 Ariz. 310, 419 P.2d 337, State v. Neel (1972), 8 Or.App. 142, 493 P.2d 740, and other decisions of those states indicating a strong inclination by con-

struction to read into the criminal statutes the requirement of scienter. Both of these states have a history of such judicial construction, but as we shall later set forth, we think that judicial precedents of this Court do not permit such judicial activism.

close proximity to a neighboring bar or saloon, may or may not have been locked. Perhaps the defendant entered the office thinking that he was entering the bar, and was then overcome by his inebriation. Conceivably the door was locked but gave way to the extra force exerted by one eager to return to his pursuit of this popular indoor sport. This particular defendant is then confronted with the question whether the statute applies to this conduct. The majority of the Court therefore have no hesitancy in holding that he is in a position to raise the question of vagueness.

To assist us in our determination, the State cites cases in which a court, by what the State contends is proper construction of a criminal statute, has found that evil intent is an indispensable element in the statutory crime, even though not actually provided for in the law itself. Principally referred to is the case of Morissette v. United States (1952), 342 U.S. 246, 72 S. Ct. 240, 96 L.Ed. 288. In that much cited and undoubtedly leading case the federal Supreme Court held that a statute making it a crime "knowingly" to convert to one's own use or without proper authority to sell or dispose of anything of value of the United States, could not be read as proscribing an innocent appropriation of government property, without reference to the intent of the defendant, and reversed the lower court's holding that it was the mere doing of the act which constituted the crime.

We first note that the word "knowingly", a word which the State admits is missing from but claims should be read into our statute as necessary to the commission of the crime, is used in the federal statute under consideration. However, this and other cases following it or in similar vein are principally cited by the State for the proposition that the courts may and should broadly construe criminal statutes and preserve in those statutes, even though not express therein, certain old, established principles: for example, that an "injury can amount to a crime only when inflicted by intention" (342 U.S. at 250, 72 S.Ct. at 243); "that to constitute any crime there must first be a 'vicious will'" (citing Blackstone); that crime is constituted such "only from concurrence of an evil-meaning mind with an evil-doing hand" (342 U.S. at 251, 72 S.Ct. at 244). The court then says (342 U.S. at 252–260, 72 S.Ct. at 244–248):

"* * * Courts, with little hesitation or division, found an implication of the requirement as to *offenses that were taken over from the common law*. The unanimity with which they have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental element. * * * By use or combination of these various tokens [such as "criminal intent", "guilty knowledge", "scienter"], they have sought to protect those who were not blameworthy in mind from conviction of infamous *common-law crimes*.

[Emphasis supplied.]

\*      \*      \*      \*      \*      \*

"Stealing, larceny, and its variants and equivalents, were among the earliest offenses known to the law that existed before legislation. * * * State courts of last resort, on whom fall the heaviest burden of interpreting criminal law in this country, have consistently retained the requirement of intent in larceny-type offenses."

Conceding that the federal judiciary did not have the power to create crimes, Mr. Justice Jackson declared that nevertheless Congress should be considered to have adopted the "cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken" and the requirement of intention could not be considered to have been eliminated by the Congress in not specifically providing therefor. In other words, offenses taken into statutes from the common law, whether by the Congress or by state legislatures, should be considered as adopted with the same elements that were essential to their

definition at common law, namely, the existence of an evil intent.

We think that this case and those of similar import, while completely authoritative, do not apply to the situation at bar because the offense declared in our statutes is not a "larceny type" or "burglary type" statute and therefore could not be said to carry with it the common-law concepts. It has been said with respect to the requirements of burglary at common law that "it is clear, that such breaking and entry must be with felonious intent, otherwise it is only a trespass." II Cooley's Blackstone's Commentaries on the Laws of England, 4th Ed., p. 1387. We have found no other statement indicating that trespass or mere breaking and entry was a crime or anything more than a civil wrong. In 87 C.J.S. Trespass § 140, p. 1101, it is said:

> "No trespass to property is a crime at common law unless it is accompanied by or tends to create a breach of the peace, although the act may be committed forcibly, willfully, or maliciously."

The decision of this Court in State v. A. H. Read Co. (1925), 33 Wyo. 387, 240 P. 208, 212–213, considering reserved constitutional questions as to the validity of a penal statute pertaining to hours of work, while not involving a statute similar to the one under attack, is pertinent upon the power of definition or construction by the court:

> " 'Crime,' as usually defined, is 'an act committed or omitted, in violation of a public law either forbidding or commanding it.' 4 Blackstone's Comm. 5; 16 C.J. 50; 8 Rul. Case L. 50. And no one can be lawfully convicted of a crime, whether felony or misdemeanor, unless the act charged, *if not a crime at common law*, is clearly denounced, or penal-

ized as a crime by statute. So it is well settled that criminal statutes are to be strictly construed, which means that they are not to be enlarged by implication or extended by inference or construction * * *. This rule, said to be based upon a conception of manifest justice and the plain principle that the power of punishment is vested primarily in the Legislature, requires a sufficient degree of certainty in a criminal statute, that will place it outside the necessity of judicial determination, through mere implication or construction, of who or what acts are punishable under it. Thus in United States v. Reese, 92 U.S. 214, 23 L.Ed. 563, it is said:

> " 'If the Legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.' " [7]

[Emphasis supplied.]

█ Without really indicating just what intent it is talking about, the State argues that the use of the word "unlawfully" in the questioned statute makes it possible for this Court to construe the statutory offense of breaking and entry as including the element of evil intent. Particularly, it is argued that the existence of an intent or scienter is to be presumed to be a part of that statute and that "unless a person in-

---

7. See also Day v. Armstrong (Wyo.1961), 362 P.2d 137, 148, and State v. Gallegos (Wyo. 1963), 384 P.2d 967, 968 reiterating the principles established in *Day*, that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its applica-

tion violates the first essential of due process of law." To the same effect are Winters v. New York (1947), 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840, and more recently Papachristou v. City of Jacksonville (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110.

tentionally or knowingly unlawfully enters one of these enumerated places, he could not have been guilty of crime", and further that the term "unlawful" is sufficient clearly to establish that intent or knowledge is required. Counsel do not cite authority for their equation of "unlawfully" with "knowingly" and the cases appear to us to refute such a proposition. Thus in the early Texas case of State v. Stalls (1872), 37 Tex. 440, 441, it is said: " 'Unlawfully' is not equivalent to 'knowingly', for an act may be knowingly done, and yet not be unlawful, and an act may be unlawful, and yet committed in ignorance." In Nunnelley v. Commonwealth (1925), 209 Ky. 191, 272 S.W. 378 it is said that "['unlawfully'] is not sufficient or equivalent to the word 'knowingly.' " In State v. Falkner (1921), 182 N.C. 793, 108 S.E. 756, 758, cited in In re Hege (1934), 205 N.C. 625, 172 S.E. 345, it is said that: "The term 'unlawfully' implies that an act is done or not done, as the law allows or requires". Notwithstanding the decision in *Morissette*, the United States Court of Appeals for the First Circuit, in Hughes v. United States (1964), 338 F.2d 651, 652 refused to read into the words "unlawfully removes any merchandise" the further word "knowingly". As there expressed:

> "The Government argues that the requirement of knowledge is satisfied, both in the statute and in the indictment, by the use of the word 'unlawfully'. We do not agree. It would seem to us that 'unlawfully' is a conclusion of law meaning 'contrary to law' and no more. We do not interpret it as meaning 'knowingly.' * * * Of the cases cited by the Government as being to the contrary, we have not found one which clearly holds that 'unlawfully' *alone* will suffice to imply an element of intent."

If we take the definition of "unlawfully" as set forth in State v. Orecchio (1953), 27 N.J.Super. 484, 99 A.2d 595, 598 that it "negatives all legal cause of excuse. Bishop, Criminal Procedure (1913) § 503", we are then confronted with the necessity of determining what is a legal excuse for breaking and entering a building, and we, rather than the legislature, would thereby furnish the definition of the crime. We agree with counsel for Stern that the most that the term could properly be said to mean, taken in reference to the breaking and entry of a building, would be only that the prospective offender had no right or privilege to be in the building. This leaves us far short of a determination as to what might constitute a legal excuse for being in a place without right or privilege.

It has been said in State v. Barquet (Fla.1972), 262 So.2d 431, 434, citing State ex rel. Lee v. Buchanan (Fla.1966), 191 So.2d 33, 36, that:

> "If a statute in defining a criminal offense omits certain necessary and essential provisions which serve to impress the acts committed as being wrongful and criminal, the courts are not at liberty to supply the deficiencies or undertake to make the statute definite and certain."

We have said in State ex rel. Murane v. Jack (1937), 52 Wyo. 173, 70 P.2d 888, 892, that the legislative intent governs and that "intent must be ascertained by reading it [the statute] according to the natural import of the language used without resorting to subtle and forced construction." Were we to attempt to construe this statute as requiring intent, scienter, or mens rea, the immediate question is what intent we should read into it. If it is the intent to steal or commit a felony, we have merely rephrased § 6–129. Would it be the intent to invade the privacy of the occupants? If the building is unoccupied, would the intent to satisfy one's curiosity and just look around constitute a legal excuse? If the breaking and entry were into a mountain cabin, effected with knowledge that the building belonged to another, and after physically destroying the sturdiest locks would it be excused if the only purpose was to secure shelter from a raging blizzard? Other questions may occur to the reader, but the point is that if able counsel and this Court must

argue about questions as to what kind of conduct is proscribed, it certainly follows that men of common intelligence must necessarily grope as to the meaning and would have no understanding at all as to what acts were criminal. A majority of the Court are therefore of the opinion that the burden of construction sought to be imposed on us by the Attorney General and County Attorney is beyond our powers and that if there is to be created a criminal offense, be it a felony or misdemeanor, based on the mere breaking and entering a locked or sealed building whatever the reason therefor, the burden of defining accurately and understandably the condemned conduct should be left to the legislature. As of now the legislature has not met that burden.

The statute as written is unconstitutionally vague and the judgment of the district court is affirmed.

Mr. Chief Justice PARKER and Mr. Justice McINTYRE dissent.