Elmer STREITMATTER, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–171.

Supreme Court of Wyoming.

June 4, 1999.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Assistant Public Defender; and Karl Linde, Assistant Public Defender, Representing Appellant.

---

\* Chief Justice at time of oral argument; retired

William U. Hill, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker–Musick, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,\*JJ.

THOMAS, Justice.

In his appeal from a conviction of aggravated assault in violation of Wyo. Stat. Ann. § 6–2–502(a)(ii) (Michie 1997), Elmer Streitmatter (Streitmatter) raises the constitutionality of the statute under which he was convicted. In a related claim of error, he asserts that the trial court failed to properly instruct the jury on the elements of the crime. In addition, he presents claims of error in the admission and exclusion of evidence, arguing that a police officer should not have been permitted to recount statements made to him by the victim and the victim's daughter and, further, that he should have been permitted to present evidence as to his mental and physical condition at the time of the offense. Our examination of the record and review of the pertinent rules of law persuade us that the statute is constitutional; the trial court properly instructed the jury; and there was no abuse of discretion in the evidentiary rulings. The Judgment and Sentence of the Court is affirmed.

In the Brief of Appellant, the issues raised by Streitmatter are:

ISSUE I

> Whether Wyo. Stat. § 6–2–502(a)(iii) is unconstitutionally vague on its face because it does not require a mental element and fails to discriminate between threats with a deadly weapon that constitute criminal behavior and those that do not, in violation [of] Wyo. Const. Art. 1 § 6. U.S. Const. Amend. XIV.

ISSUE II

> Whether the district court committed reversible error when it allowed Officer Smith to testify to numerous statements

November 2, 1998.

allegedly made by [the victim] and [the victim's daughter] that did not qualify for any hearsay exception or exemption.

ISSUE III

Did the district court commit reversible error by failing to properly instruct the jury on the law relating to the elements of the crime?

ISSUE IV

Whether the district court deprived appellant of his right to present a defense by prohibiting three defense witnesses from testifying concerning appellant's mental and physical condition at the time of the offense.

The State of Wyoming presents the issues in this way in its Brief of Appellee:

I. Whether Wyo. Stat. § 6–2–502(a)(iii) is unconstitutionally vague?

II. Whether the trial court properly instructed the jury?

III. Whether the trial court properly allowed Officer Smith to testify concerning statements made to him?

IV. Whether the trial court properly prohibited testimony concerning appellant's medical and physical condition?

On April 14, 1996, Streitmatter was living in Cheyenne with his ex-wife, the victim, and their four children. Sometime during the morning of that day, Streitmatter and the victim argued about Streitmatter's drinking alcohol in the morning. The victim and the children left the house shortly before noon with the victim's mother, and they all went to the home of the victim's step-sister. About an hour later, the victim's mother left the step-sister's home with the children, and eventually she took the children back to the Streitmatter residence. The victim returned home later that evening.

Streitmatter pulled the victim into the house by her hair, and he began beating her and accusing her of spending the evening in the company of other men. There came a time during the struggle when Streitmatter held the victim against a wall with one hand while holding two knives in his other hand. Fortuitously, the Streitmatters' landlord was in the area on an unrelated errand, and,

having noticed the screen door was open, he decided to investigate. The victim asked Streitmatter to permit the landlord to take her and the children to her mother's house for the night. Streitmatter then accused the victim of wanting to have sex with the landlord, and he threw her against the wall, causing her to lose consciousness. After that, Streitmatter threatened the landlord with the knives, but the landlord was able to calm Streitmatter down enough so that he would sit and talk.

The victim regained consciousness, and, without Streitmatter noticing, went to a neighbor's home to call for help. The victim then returned home and stayed with the children while the landlord held Streitmatter in conversation until the police arrived. After talking with the parties, the police took Streitmatter into custody on a charge of simple assault.

Later, Streitmatter was charged with aggravated assault and battery, in violation of Wyo. Stat. Ann. § 6–2–502(a)(iii), with the charge specifying the knives as the deadly weapon. Streitmatter entered a plea of not guilty to this charge, and his trial commenced on November 18, 1996. The following day, the jury returned a verdict of guilty. On March 14, 1997, the trial court sentenced Streitmatter to a term of not less than four and not more than six years in the state penitentiary. Streitmatter appeals from the Judgment and Sentence of the Court.

In what can best be described as a convoluted argument, Streitmatter first attacks the constitutionality of Wyo. Stat. Ann. § 6–2–502(a)(iii) because it does not require a mental element and because it fails to discriminate between conduct that would constitute criminal behavior and conduct that would not. Streitmatter acknowledges the clear holding of this court in *Cox v. State,* 829 P.2d 1183 (Wyo.1992), that Wyo. Stat. Ann. § 6–2–502(a)(iii) defines a general intent crime, which simply proscribes a particular act, and requires only the intent to be inferred from doing the act that constitutes the offense charged. Even so, Streitmatter relies upon *State v. Stern,* 526 P.2d 344 (Wyo. 1974) and *Nimmo v. State,* 603 P.2d 386

(Wyo.1979) to structure an argument that the statute is unconstitutional because no mental element is articulated.

The major fallacy in Streitmatter's reliance on *Stern* lies in the assumption that assault and battery is not a common law crime. In *Ross v. State*, 16 Wyo. 285, 93 P. 299, 301 (1908), in dictum, this Court recognized that assault and battery was a common law crime, while noting that the statutory definitions differed from the common law crime. We are in accord with the Supreme Court of Maine, which held that the statutory definition of assault and battery is simply declaratory of the common law. *State v. Rand*, 156 Me. 81, 161 A.2d 852, 853 (1960). It is clear that Wyo. Stat. Ann. §§ 6–2–501 and 6–2–502 (Michie 1997), simple assault and battery and aggravated assault and battery, are the statutory equivalents of a crime at common law. In *Nimmo*, the court pointed out that *Stern* "warns that the guidelines set forth in the opinion are inapplicable in determining the validity of statutes involving common-law crimes * * *." *Nimmo*, 603 P.2d at 389. While Streitmatter seeks to sever subparagraph (iii) from the rest of Wyo. Stat. Ann. § 6–2–502(a), claiming that the conduct proscribed was not a crime at common law, we are satisfied that the entire statute must be evaluated to determine if it had a genesis in common law, and we hold that it did.

■ We have no hesitancy in holding in this case that the crime defined by Wyo. Stat. Ann. § 6–2–502(a)(iii) is a general intent crime. The statute proscribed this conduct:

> (a) A person is guilty of aggravated assault and battery if he:
>
> * * *
>
> (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another * * *.

We rely upon *Bryan v. State*, 745 P.2d 905, 909 (Wyo.1987), where we said:

> In determining whether a factual basis exists for a guilty plea to a general intent crime, the court must only find that the act was done voluntarily. " '[T]he inference thereupon arises that the defendant intended that which resulted.' " *Slaughter v. State*, Wyo., 629 P.2d 481, 483–484 (1981), quoting *Dorador v. State*, Wyo., 573 P.2d 839, 843 (1978).
>
> > "[W]here the offense is malum prohibitum, intent and knowledge are not elements of the crime, unless expressly made so, and all that is required for the commission of the crime is the intentional doing of the prohibited act itself, regardless of whether the doer intended to commit the crime resulting from the intentional act." (Footnotes omitted.) 22 C.J.S. Criminal Law, § 30, p. 105.

Further, we said in *Cox*, 829 P.2d at 1185–86:

> Rather than describing a specific intent crime, § 6–2–502(a)(iii) conforms to our definition of a general intent crime; i.e., a statute which simply describes a particular act, without reference to intent to do a further act or achieve a future consequence. The language, "[t]hreatens to use," merely describes what a defendant must do with a drawn deadly weapon to be guilty of aggravated assault. *See Johnston v. State*, 747 P.2d 1132, 1134 (Wyo. 1987) ("threatens to use" requires an actual threat of physical injury during the act of employing a deadly weapon). As a general intent crime, aggravated assault requires only that intent which may be inferred from doing the act which constitutes the offense charged; i.e., slashing back and forth with the hunting knife. *Carfield [v. State ]*, 649 P.2d [865,] 869 [ (Wyo.1982) ]; *Sanchez v. State*, 567 P.2d 270, 279 (Wyo. 1977).

The prong of Streitmatter's first argument that this statute is unconstitutionally vague because it does not require a mental element is fallacious. We hold that the statute is constitutional contrary to Streitmatter's argument.

■ Streitmatter also asserts facial unconstitutionality because the statute lacks the requisite specificity to permit a reasonable person to understand what conduct is proscribed. He presents suggestions of innocent activities that he contends would be reached by this statute, and that a reasonable person could not separate the activities

that are prohibited from those that are not. Streitmatter suggests that theatrical productions involving weapons, Halloween entertainment and self-defense classes in which the participants "threaten" each other with weapons, while innocent in their nature, could be charged as crimes under this statute. Streitmatter's argument misapprehends the meaning of the word "threaten." In *Johnston v. State*, 747 P.2d 1132, 1134 (Wyo. 1987), we held that the phrase "[t]hreatens to use" in Wyo. Stat. Ann. § 6–2–502(a)(iii) means "an actual threat of physical injury," a definition easily distinguishable from the feigned threats argued by Streitmatter because in none of those instances is there an actual threat of physical injury. Specificity, therefore, can be inferred from the word "threaten" in the statute, as we have defined that word. There is no real possibility of harm in the conduct that Streitmatter relies upon, and, therefore, such conduct encompasses no actual threat. This Court stated the proposition clearly in *Nimmo*, 603 P.2d at 390, when we said that "[w]e believe it is ridiculous to impute to the legislature an intention to include innocent acts as criminal felonies." This statute does not extend to constitutionally protected conduct.

■ Since the statute does not extend to constitutionally protected conduct, we review for facial unconstitutionality only if the statute specifies no standard of conduct at all. *Griego v. State*, 761 P.2d 973, 975 (Wyo.1988). The United States Supreme Court has identified a statute that encompasses no standard of conduct as "so indefinite that police, court, and jury were free to react to nothing more than their own preferences * * *." *Smith v. Goguen*, 415 U.S. 566, 578, 94 S.Ct. 1242, 1250, 39 L.Ed.2d 605 (1974). That description of a statute that has no standard of conduct is not applicable in construing Wyo. Stat. Ann. § 6–2–502(a)(iii). We decline to apply facial review to this case, and we hold that the statute is not unconstitutionally vague on its face.

The claim of error in instructing the jury is intertwined with the claim of unconstitutionality regarding the element of intent. Streitmatter's argument is that reversible error was committed when the trial court refused two jury instructions requested by the defense. The jury instructions that were refused read:

### INSTRUCTION NO. ___

The State must prove beyond a reasonable doubt each and every element of the crime of Aggravated Assault as described in instruction No. ___. In order for the State to prove the element of "threatens to use," it must prove, beyond a reasonable doubt that Mr. Streitmatter actually threatened [the victim] with physical injury during the act of employing a deadly weapon.

### INSTRUCTION NO. ___

The crime of Aggravated Assault is a general intent crime. This means that, in order for the state to prove beyond a reasonable doubt that Mr. Streitmatter committed Aggravated Assault it must also prove, beyond a reasonable doubt, that Mr. Streitmatter committed the charged act with an evil meaning mind.

We afford significant deference to the trial court in instructing the jury:

[T]he trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues.

*Scadden v. State*, 732 P.2d 1036, 1053 (Wyo. 1987), *followed in Seymour v. State*, 949 P.2d 881, 883 (Wyo.1997).

■ Streitmatter argues that it was essential to give the first requested jury instruction because of a technical legal meaning attached to the phrase "[t]hreatens to use." The requested jury instruction follows our language in *Johnston*, and Streitmatter's contention is that this suggests a meaning so different from the ordinary meaning that the jury could misunderstand the import of the phrase. If Streitmatter's analysis were accurate, it would be incumbent upon the trial court to instruct the jury on the technical legal meaning of the term. *Compton v. State*, 931 P.2d 936, 941 (Wyo.1997). We hold, however, that the definition of the

phrase "[t]hreatens to use" found in Wyo. Stat. Ann. § 6–2–502(a)(iii) does not afford a different meaning to that phrase than its ordinary meaning. *Cox,* 829 P.2d at 1185. The jury instruction given by the trial court on the elements of the offense correctly tracked the statute. The essence of the argument by Streitmatter is that the phrase "actually threatened" encompasses different conduct than the word "threaten.". There is no meaningful distinction between "threaten" and "actually threatened." The proposed jury instruction would have afforded no useful clarification to the jury, but instead it appears that it would likely cause the very confusion that Streitmatter claims it would remedy.

■■■ The second jury instruction requested by Streitmatter is premised upon a perceived necessity for us to redefine a general intent crime. Streitmatter is not satisfied with the connotation that has attached to a "general intent" crime in our prior cases. For some twenty years, our rule has been that to convict on a general intent crime, the jury need only find that the defendant intended to do the prohibited act. *Dorador v. State,* 573 P.2d 839, 843 (Wyo.1978). For even longer, it has been our rule that the jury may infer intent from the conduct of the defendant. *Deeter v. State,* 500 P.2d 68, 71 (Wyo.1972). The jury instructions given by the trial court adequately addressed both of these propositions.

■■■ We assume that defense counsel is aware that the word "evil" is an emotionally charged word in the setting of our modern society in America. In asking that the jury be required to find beyond a reasonable doubt the commission of the act charged with an "evil meaning mind," Streitmatter simply invites the redefinition of the concept of general intent. We choose not to pursue that invitation. We do not reverse upon claims of instructional error so long as the trial court adequately instructed the jury on all the elements of the crime, and the trial court did that in this case.

■■■ The second claim of error that Streitmatter asserts is that the trial court should not have allowed Officer Smith to testify about statements made by the victim and the victim's daughter because their testimony was hearsay. We also afford deference to the rulings of a trial court on the admission or exclusion of evidence, and we reverse only if we find an abuse of discretion. *Horton v. State,* 764 P.2d 674, 676–77 (Wyo. 1988). If a legitimate basis exists for the decision of the trial court, and it did not act in any unreasonable fashion, we sustain its ruling. *Id.* at 677 (*citing Bishop v. State,* 687 P.2d 242 (Wyo.1984), *cert. denied* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985)).

The question then is whether the ruling of the trial court in admitting the testimony of the officer had a reasonable and legitimate basis. Hearsay is defined in W.R.E. 801(c): " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The utilization of hearsay is controlled by W.R.E. 802, which provides: "Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court of Wyoming or by statute." Testimony that would be excludable under W.R.E. 802 may be admitted pursuant to exceptions from that rule set forth in W.R.E. 803. In W.R.E. 803(2), an exception is found for "excited utterance," which is defined as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[.]" The excited utterance exception is justified by the "special reliability that is furnished when excitement suspends the declarant's powers of reflection and fabrication." 2 *McCormick on Evidence* § 272 at 216 (4th ed.1992).

■■■ Streitmatter's contention is that the recitation by the officer of the statements made by the victim and the victim's daughter does not fit within the scope of the excited utterance exception. Streitmatter points out correctly that we have identified several factors for trial courts to consider in determining whether the excited utterance exception applies, but the ultimate issue is whether the declarant's condition at the time the statement was uttered was such as to make the statement spontaneous, excited, or impulsive

rather than the product of reflection and deliberation. Streitmatter then points to the forty-five minute interval between the threats by Streitmatter and the statements to the officer, and he argues that this was too long a time for the declarants to remain under the stress of excitement. A lapse of time of similar duration was discussed by the United States Court of Appeals for the Eighth Circuit in *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). That court refused to hold that the trial court had abused its discretion in permitting testimony recounting statements made forty-five to seventy-five minutes after the startling event. Examining the facts in the record, we are satisfied that they were sufficient to justify the determination by the trial court that the victim and her daughter were still under the stress of excitement when they spoke to the officer. The officer repeatedly testified that both the victim and the victim's daughter were still hysterical and very upset when he spoke with them. The trial court did not abuse its discretion when it permitted the testimony of the officer pursuant to W.R.E. 803(2).

■ As a final assertion of error, Streitmatter argues that the trial court should have permitted three defense witnesses to testify as to Streitmatter's mental and physical condition at the time of the offense. The proffered testimony was refused, and the record demonstrates that these witnesses would have testified that Streitmatter suffered from severe back pain, stress, post-traumatic stress disorder, and depression; was addicted to drugs and alcohol; and experienced seizures shortly after his arrest. The same rule with respect to an abuse of discretion applies to the exclusion of prof-

fered evidence that pertains to the admission of proffered evidence. *Horton*, 764 P.2d at 676–77. Streitmatter again rests his claim upon the difference between "threaten" and "actually threatened." The claim fails in this context as well. He argues that he was denied the opportunity to present a defense because the testimony that was rejected addresses the element of intent. He contends that the conditions identified in the proffered testimony preclude the formation of the necessary general intent, and that in turn precludes the existence of an "actual threat."

■ The crime of aggravated assault is a general intent crime, and its commission requires only that intent which the jury may infer from the commission of the proscribed act. *Cox*, 829 P.2d at 1186. Voluntary intoxication is not a defense to a general intent crime. *Id.* Mental illness indeed is a valid defense, but Streitmatter did not present a plea of not guilty by reason of mental illness or deficiency.[1] The proposed testimony that Streitmatter sought to have admitted would not affect the element of general intent, and in the absence of a plea of not guilty by reason of mental illness or deficiency, it was not relevant, and the trial court committed no abuse of discretion in excluding the testimony.

We have found no reversible error in the record such as that claimed on behalf of Streitmatter. The Judgment and Sentence of the Court is affirmed.

---

1. Streitmatter filed a motion to enter a plea of not guilty by reason of mental illness or deficiency, but an evaluation at the Wyoming State Hospital established that he was not mentally ill as described in Wyo. Stat. Ann. § 7–11–304 (Michie 1997).