KAUTZ, Justice.
[¶1] A jury convicted Don Birch of aggravated assault and battery and breach of peace. Mr. Birch argues his convictions should be reversed because the district court failed to properly instruct the jury, the court erroneously allowed the State to present evidence of uncharged misconduct, and there was insufficient evidence to support his aggravated assault and battery conviction. We affirm.
ISSUES
[¶2] Mr. Birch raises three issues in this appeal:
I. Whether the district court erred when it failed to instruct the jury on Wyoming law regarding "actual threat."
II. Whether the district court erred in allowing the presentation of 404(b) evidence.
III. Whether the State presented sufficient evidence to support an aggravated assault and battery conviction.
FACTS
[¶3] Mr. Birch and his wife, Esther, were neighbors with Gordon and Cheri Johnson in a rural subdivision in Merna, Wyoming. The neighbors were friendly with one another until 2010, when they had a dispute over the property line of their parcels. They have not spoken civilly to one another since that time.
[¶4] On November 1, 2016, Mr. Birch visited his friend and neighbor, Howard Leeper. Mr. Birch told Mr. Leeper he wanted to shoot Mr. Johnson in the leg because he believed Mr. Johnson had sabotaged some of his equipment. This statement was consistent with other statements Mr. Birch had made to Mr. Leeper in the prior ten days.
[¶5] During the night of November 2, 2016, Mr. Johnson was awakened by gunfire. He opened a window in his home and could see and hear Mr. Birch yelling Mr. and Mrs. Johnson's names and firing his gun. Mr. Birch also yelled, "Come over here, I'm going to kill you." The next morning, Mr. Johnson reported Mr. Birch's conduct to the Sublette *532 County Sheriff's Department. Deputy Zack Semmons responded to the Johnson home, and after speaking with Mr. Johnson, spoke with Mr. Birch. Mr. Birch told Deputy Semmons that he "fucking hates" Mr. Johnson and that Mr. Birch was an expert marksman when he was in the Army. He also freely admitted he shot his gun thirty times while yelling obscenities at the Johnsons the evening before. Mr. Birch showed Deputy Semmons where he was shooting his gun, and from that location Deputy Semmons could clearly see the Johnson property.
[¶6] On November 7, 2016, the Johnsons met with Sheriff K.C. Lehr to discuss concerns the Johnsons had about their welfare and property due to Mr. Birch's actions. Sheriff Lehr explained how to obtain a protection order and also advised them to continue to report and attempt to record any similar behavior by Mr. Birch in the future.
[¶7] Later in the evening of November 7th, the Johnsons arrived at the home of their neighbors, Pete and Melanie Peterson, for dinner. Shortly after arriving at the Peterson home, Mr. Johnson received a text message from another neighbor, who informed Mr. Johnson that Mr. Birch was shooting his gun near Mr. Johnson's home again. Mr. Johnson and Mr. Peterson made the approximately ten-minute drive to the Johnson property to assess the situation. When the men arrived, they could see Mr. Birch outside shooting his gun while screaming vulgarities about the Johnsons. They listened to Mr. Birch for twenty to thirty minutes and then Mr. Birch got into his truck and left. The two returned to the Peterson home and Mr. Johnson reported the incident to the Sublette County Sheriff's Department.
[¶8] The Johnsons returned to their home at approximately 7:30 p.m., and shortly thereafter Mr. Birch again began to shoot his gun while screaming at the Johnsons. Mr. Birch yelled at the Johnsons using their first names and copious amounts of profanity and vile name-calling, saying things such as, "I'm gonna fuckin' shoot your ass, you fuckin' piece of shit[,]" and "I'm gonna fuckin' kill you, you fuckin' piece of shit. Whoo. Call the cops. Are you scared, Gordon? Are you scared, motherfucker? Are you scared, fucker? You should be, you fuckin' piece of shit." The Johnsons could see Mr. Birch during his tirade. The couple turned off the lights in their home and used Mr. Johnson's cellphone to audio record Mr. Birch's behavior. Mr. Birch continued shooting his gun and yelling until approximately midnight. The next day, Mr. Johnson contacted the sheriff's department again about the incident and provided the cell phone recordings. On November 17, 2016, Mr. Birch was arrested and charged, based upon the November 7th conduct, with aggravated assault and battery, in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii) (LexisNexis 2016), and breach of peace, in violation of Wyo. Stat. Ann. § 6-6-102(a) (LexisNexis 2016).
[¶9] The case proceeded to trial, and a jury convicted Mr. Birch of both charged counts. The district court sentenced Mr. Birch to three to five years imprisonment for the aggravated assault and battery conviction, but suspended that sentence in favor of five years of probation. The court sentenced Mr. Birch to a concurrent 180 days in jail for the breach of peace conviction, but suspended that sentence in favor of six months of probation. Mr. Birch filed a timely notice of appeal. Other facts will be discussed as necessary below.
DISCUSSION
Jury Instructions
[¶10] The district court gave the jury the following instruction regarding the elements of aggravated assault and battery:
INSTRUCTION NO. 16
The elements of the crime of Aggravated Assault and Battery-Threat to Use Drawn Deadly Weapon, as charged in Count I of the Criminal Information in this case, are:
1. On or about November 7, 2016
2. in Sublette County, Wyoming
3. the Defendant, Don Birch
4. threatened to use a drawn deadly weapon on Gordon Johnson,
5. when the same was not reasonably necessary in defense of Defendant's person, *533 property or abode or to prevent serious bodily injury to another.
If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.
[¶11] Mr. Birch requested the district court also give the following instruction to further define "threatens to use":
"Threatens to use" means more than mere presence of a weapon. The phrase "threatens to use" requires proof beyond a reasonable doubt of an actual threat of physical injury during the act of employing a deadly weapon.
A threat is an expression of an intention to inflict pain, injury, or punishment. A threat may be expressed by words or acts or a combination of words and acts. Considering all of the circumstances of the case, you must decide whether the defendant's words and acts amounted to an express or implied statement of his intention to use a drawn deadly weapon to inflict pain, injury, or punishment.
The district court declined to give the proposed instruction, concluding it would cause confusion regarding the required intent. Instead, the court opted to give the pattern jury instruction defining "threatens to use":
INSTRUCTION NO. 17
"Threatens to use" means more than mere presence of a weapon. The phrase "threatens to use" requires proof beyond a reasonable doubt of an actual threat of physical injury during the act of employing a deadly weapon.
A threat may be expressed by words or acts or a combination of words and acts.
[¶12] Mr. Birch argues the district court erred in not giving the jury his proposed instruction because without it the jury was not fully informed of the definition of an essential element of the crime. Specifically, the proposed instruction would have given further clarity of the "actual threat" necessary to convict Mr. Birch. We review a district court's decision regarding jury instructions for an abuse of discretion. Dougherty v. State , 2016 WY 62, ¶ 10, 373 P.3d 427, 431 (Wyo. 2016). The district courts are afforded "substantial latitude to tailor jury instructions to the facts of the case." Adekale v. State , 2015 WY 30, ¶ 37, 344 P.3d 761, 770 (Wyo. 2015). So long as the jury instructions correctly state the law and adequately cover the issues presented in the trial, reversible error will not be found. Dougherty , ¶ 11, 373 P.3d at 431 (quoting Brown v. State , 2015 WY 4, ¶ 40, 340 P.3d 1020, 1031 (Wyo. 2015) ).
[¶13] Mr. Birch properly points out that this Court has stated the element of "threatens to use" requires "proof of an actual threat of physical injury during the act of employing a deadly weapon." Hill v. State , 2016 WY 27, ¶ 15, 371 P.3d 553, 558-59 (Wyo. 2016) (quoting Johnston v. State , 747 P.2d 1132, 1134 (Wyo. 1987) ). He argues his proposed instruction gives further specific definition to the term and the instruction was previously approved by this Court in Johnston . He is correct that we determined the district court in Johnston did not err when it provided the jury with the instruction proposed by Mr. Birch. Johnston , 747 P.2d at 1135. However, the circumstances in which the instruction was given in Johnston are different from those here. In Johnston , the instruction was given only after the jury expressed confusion during its deliberations about the meaning of "threatens to use." Id . at 1133. Further, the definition given in Johnston was simply the dictionary definition of the word "threat." Id . at 1135 ; see also, The American Heritage Dictionary of the English Language 1340 (New Collegiate Ed. 1978). While the Court concluded the district court's decision was a proper statement of Wyoming law, it did not mandate that this instruction always be given in future cases.
[¶14] In fact, since Johnston we have explicitly held that "threat" and "threatens to use," as used in § 6-2-502(a)(iii), do not have a "definite, technical meaning under the law different from the ordinary meaning and which the jury might therefore not understand."
*534 Cardenas v. State , 811 P.2d 989, 996 (Wyo. 1991) ; Streitmatter v. State , 981 P.2d 921, 925-26 (Wyo. 1999). Therefore, the court is not required to define the term, and an instruction that tracks the elements as listed in the statute is sufficient. Cardenas , 811 P.2d at 996 ; Streitmatter , 981 P.2d at 926. Here, the district court properly instructed the jury regarding the elements of the crime.
[¶15] However, the court went beyond what was required and also gave the jury the Wyoming Pattern Jury Instruction defining "threatens to use." See, Haire v. State , 2017 WY 48, ¶ 16 n.5, 393 P.3d 1304, 1308 n.5 (Wyo. 2017) ("We take this opportunity to note that the pattern jury instructions are very useful, but that they are not required to be given."); WCrPJI 25.02C2. This instruction adequately addressed the fact that an "actual threat" is required for the jury to find Mr. Birch "threatened to use" a drawn deadly weapon. It specifically stated: "The phrase 'threatens to use' requires proof beyond a reasonable doubt of an actual threat of physical injury during the act of employing a deadly weapon." (Emphasis added.) As we explained in Streitmatter , "[t]here is no meaningful distinction between 'threaten' and 'actually threatened.' " Streitmatter , 981 P.2d at 926. Because these terms are afforded their common and ordinary meaning, no further definition was required. The district court did not abuse its discretion when it declined to submit Mr. Birch's proposed instruction to the jury.
Wyoming Rule of Evidence 404(b)
[¶16] As the case proceeded to trial, the State filed its notice of intent to introduce as evidence at trial Mr. Birch's conduct toward the Johnsons on November 2nd and the statements he made to Mr. Leeper on November 1st. The State argued this evidence was "intrinsic" to the charged offense and not evidence of uncharged misconduct. However, in an abundance of caution it provided an analysis of why the evidence should be admitted under Wyoming Rule of Evidence 404(b). Mr. Birch argued the evidence at issue is uncharged misconduct and is inadmissible under Rule 404(b). The district court concluded that, because Deputy Semmons referred to Mr. Birch's statements to Mr. Leeper and the November 2nd incident in his affidavit of probable cause in support of the Information, the proposed evidence is part of the charged conduct and not prohibited by Rule 404(b). Consequently, the district court did not engage in an analysis of whether the evidence would have been admissible if Rule 404(b) applied.
[¶17] During the trial, defense counsel renewed her objection to Mr. Johnson's testimony regarding the November 2nd incident as inadmissible evidence of uncharged misconduct. The district court excused the jury and the State and defense counsel argued why the evidence was or was not admissible under Rule 404(b). The court maintained its belief that the November 2nd incident was evidence offered to prove the charged offense and, therefore, Rule 404(b) did not apply.
[¶18] On appeal, Mr. Birch continues to argue that the November 2nd incident was uncharged misconduct evidence, and the district court erred in concluding otherwise.[1] We review a district court's decision regarding the admissibility of evidence under Rule 404(b) for an abuse of discretion. Cardenas v. State , 2014 WY 92, ¶ 7, 330 P.3d 808, 810 (Wyo. 2014). When applying this standard, "we recognize that a 'trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.' " Id . (quoting Gonzalez-Ochoa v. State , 2014 WY 14, ¶ 11, 317 P.3d 599, 603 (Wyo. 2014) ). However, if a district court admitted evidence in error, we must consider whether the error was prejudicial or harmless. Magnus v. State , 2013 WY 13, ¶ 15, 293 P.3d 459, 465 (Wyo. 2013). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. Prejudicial error requires reversal, while harmless error does not." Id . (quoting *535 Rolle v. State , 2010 WY 100, ¶ 9, 236 P.3d 259, 264 (Wyo. 2010) ).
[¶19] Wyoming Rule of Evidence 404(b) states:
(b) Other crimes, wrongs, or acts. -Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
Because of the inherent danger for prejudice associated with uncharged misconduct evidence, there is a mandatory procedure that must be followed before that evidence may be admitted under Rule 404(b). See, Gleason v. State , 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002). Once a defendant has filed a pretrial demand for notice of the State's intent to introduce uncharged misconduct evidence, the State must identify the evidence. Rule 404(b) ; Lindstrom v. State , 2015 WY 28, ¶ 21, 343 P.3d 792, 798 (Wyo. 2015). The district court is then required to hold a pretrial hearing where the State must demonstrate the proper purpose of the evidence under Rule 404(b), the relevance of the evidence, and explain why the evidence is more probative than unfairly prejudicial. Id . The district court must then conduct an "exacting analysis," often referred to as a Gleason analysis, of the following factors:
(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.
Id . ; Gleason , ¶ 18, 57 P.3d at 340.
[¶20] Here, while the parties provided the district court the analysis of the proposed evidence both pre-trial and during the trial, the district court never conducted the required analysis because it concluded the evidence was "an inseparable part" of the charged crimes and, therefore, not uncharged misconduct. The district court based its conclusion on the fact that Deputy Semmons included the November 2nd incident in his affidavit of probable cause that was attached to the Information setting out the charges from the November 7th incident. The court relied on our holding in Marquess v. State , 2011 WY 95, 256 P.3d 506 (Wyo. 2011), where we stated evidence of an overt act was admissible as "an inseparable part of the whole deed" and not uncharged misconduct with respect to a conspiracy charge. Id ., ¶ 11, 256 P.3d at 510.
[¶21] On appeal, the State takes a different approach and submits the evidence is "intrinsic" evidence because the November 2nd incident is "logically intertwined" with the November 7th incident to explain why Mr. Birch told the Johnsons to "call the police" on November 7th. This Court has defined "intrinsic" evidence as follows: "Other act evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." Roeschlein v. State , 2007 WY 156, ¶ 10, 168 P.3d 468, 471 (Wyo. 2007). In making its argument, the State provided an analysis of this Court's 404(b) precedent, pointing out that in some cases we have held "intrinsic" evidence is uncharged misconduct requiring a Gleason analysis and in other cases we have held it is not uncharged misconduct. Compare Leyva v. State , 2007 WY 136, ¶ 23, 165 P.3d 446, 453 (Wyo. 2007) and Roeschlein , 2007 WY 156, ¶ 13, 168 P.3d at 473. While the State argues this is intrinsic evidence, based upon its analysis, it concludes the evidence must be tested by the required Rule 404(b) analysis before being admitted at trial.
[¶22] We disagree with the district court's and the State's characterization of the evidence. The State charged Mr. Birch with *536 aggravated assault and battery and breach of peace based on his conduct on November 7th, not November 2nd, and his conduct on November 2nd was not necessary to prove any of the elements of the charged crimes. Simply because Deputy Semmons included the November 2nd incident in his affidavit of probable cause does not mean that information is necessary to prove the facts of November 7th. Therefore, the district court's reliance on Marquess was misplaced. However, this evidence is not "intrinsic" as the State alleges, either. While Mr. Birch's statements to the Johnsons to "call the police" may have been premised on the fact the Johnsons had called the police on November 2nd, that fact was not crucial for the jury to understand and put into context the events of November 7th. Thus, those facts are not so "inextricably intertwined" to one another to classify the November 2nd incident as "intrinsic" to the November 7th events.
[¶23] Instead, the November 2nd incident clearly falls into the category of uncharged misconduct, and the district court was required to analyze the evidence using the Gleason factors before deeming it admissible at trial. Lindstrom , ¶ 21, 343 P.3d at 798. The district court did not conduct that analysis and, therefore, abused its discretion when it admitted the evidence at trial. Id . However, despite the error, we must still consider whether Mr. Birch was prejudiced. Magnus , ¶ 15, 293 P.3d at 465. Based on the other evidence presented by the State, we cannot say there is a reasonable possibility the verdict might have been more favorable to Mr. Birch had the error not occurred. See, id .
[¶24] Both Mr. and Mrs. Johnson testified about the November 7th events, explaining Mr. Birch's screaming and yelling and the fact they could see the muzzle flash when he shot his firearm. This testimony was corroborated by Mr. Peterson, who testified he saw Mr. Birch yelling vulgarities on November 7th. The most damning evidence of all is the recording Mr. Johnson made of Mr. Birch's tirade. Mr. Johnson identified the voice on the recording as belonging to Mr. Birch and testified the recording accurately reflected the events of November 7th. When the jury listened to the recording, it heard Mr. Birch's taunts and threats toward Mr. Johnson and the gunshots. This evidence was more than satisfactory for the jury to conclude Mr. Birch was guilty of the charged crimes. Therefore, the district court's error in admitting evidence about the November 2nd incident without conducting a Gleason analysis was harmless.
Sufficiency of the Evidence
[¶25] Mr. Birch's final argument is the State failed to present sufficient evidence that Mr. Birch "threatened to use a drawn deadly weapon" because there was a lack of evidence from which the jury could infer from Mr. Birch's words or acts that he intended to use his firearm to inflict pain, injury, or punishment upon Mr. Johnson. When reviewing the sufficiency of the evidence:
This Court examines the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence.
Jordin v. State , 2018 WY 64, ¶ 8, 419 P.3d 527, 530 (Wyo. 2018) (quoting Thompson v. State , 2018 WY 3, ¶ 14, 408 P.3d 756, 761 (Wyo. 2018) ). Further, we do not reweigh the evidence or reexamine the credibility of the witnesses and, instead, defer to the jury as the finder of fact. Id . (citing Hill, ¶ 12, 371 P.3d at 558 ; Oldman v. State , 2015 WY 121, ¶ 5, 359 P.3d 964, 966 (Wyo. 2015) ).
[¶26] Mr. Birch's argument focuses on the evidence that was not presented at trial, and attempts to minimize the evidence that was presented. For example, he asserts that, while Mr. Peterson testified he could see Mr. Birch yelling vulgarities, he testified he did not hear the vulgarities directed at a particular person, and he did not mention hearing gunshots during the tirade. Mr. Birch also relies upon the fact that law enforcement did not respond to the November 7th incident and, therefore, there was no evidence regarding the crime scene or the weapon used.
*537 Although he acknowledges the jury heard a recording of the incident, he argues the date the recording was made had not been verified by law enforcement.
[¶27] Mr. Birch's argument ignores our applicable standard of review. When we review the evidence presented in the light most favorable to the State, it is clear the jury was presented with sufficient evidence to conclude Mr. Birch was guilty of aggravated assault and battery. Mr. Johnson testified that on November 7th he received a text message from a neighbor that "[t]he SOB is shooting again." When he arrived at his home with Mr. Peterson, he heard Mr. Birch saying "[v]ery vulgar obscenities directed at Cheri and I over and over and over again." He explained that later in the evening, after he and his wife returned from their dinner with the Petersons, they "[e]ventually [ ] heard the yelling, the ranting, the screaming and the shooting start up again." Mr. Johnson saw Mr. Birch outside, discharging his firearm, while saying "I'm going to fucking kill you." This behavior continued from 7:30 p.m. until approximately midnight. Mr. Johnson also explained that he recorded thirty-two minutes of the incident on his cell phone, and the recording accurately captured the events of November 7th.
[¶28] Mrs. Johnson also testified that she saw Mr. Birch clearly while he was "using our names a lot and a lot of profanity, vulgarities, threatening, calling us to come out." He was yelling things such as, "Turn the lights on. Come outside so I can kill you." She also explained that the gunshots were "very loud and very scary, very close. You could see a muzzle blast each time."
[¶29] Finally, the jury heard Mr. Birch's behavior when the State played Mr. Johnson's cell phone recording at trial. The jury heard approximately thirty-two minutes of Mr. Birch calling the Johnsons names while taunting and threatening to shoot or kill them: "Fuck you, Gordon, you fuckin' piece of shit. You (redacted) motherfuckers. I'm gonna fuckin' kill you, you fuckin' piece of shit. Whoo. Call the cops. Are you scared, Gordon? Are you scared, motherfucker? Are you scared, fucker? You should be, you fuckin' piece of shit." Over the course of the recording, Mr. Birch mentioned killing or shooting Mr. Johnson six different times and gunshots could be heard.
[¶30] Based upon this evidence, a jury could reasonably conclude that Mr. Birch's conduct demonstrated he used his firearm as an expression of an intention to inflict pain, injury, or punishment against Mr. Johnson. For four and a half hours, Mr. Birch shot his firearm in the dark while threatening to shoot and kill Mr. Johnson. Mr. Birch was close enough to the Johnson home that the Johnsons could see the muzzle blasts from the firearm. This evidence satisfies the elements of the crime.
[¶31] The fact that the evidence did not show Mr. Birch pointed the firearm directly at Mr. Johnson does not change this conclusion. In Ewing v. State , 2007 WY 78, ¶ 4, 157 P.3d 943, 944 (Wyo. 2007), the defendant retreated to his shed and yelled at law enforcement officers, "Any [m ..... f .....] that comes in that door is going to get shot, then I'll shoot myself in the head." After officers forced the defendant out of the shed, they found a rifle in the shed. Id . We held that "those facts, combined with [the defendant's] statement that he was going to shoot the officers, allowed for the reasonable inference ... that the rifle was 'drawn' " and the jury could conclude the defendant committed an aggravated assault. Id . Similarly, in Hill , the defendant argued that because he did not make any verbal threats towards the officers and there was no evidence that he pointed his rifle at the officer, the State failed to prove he "threatened" the officers with the rifle. Hill , ¶ 17, 371 P.3d at 559. We disagreed and explained "the notion that the rifle may not have been pointed in the direction of the officers at the time it was fired does not mean that a jury could not properly infer that the shot was an expression of an intention to inflict pain, injury, or punishment." Id . (citing Hart v. State , 2003 WY 12, ¶¶ 6, 10, 62 P.3d 566, 569-70 (Wyo. 2003) (holding handgun in the air for victim to see was sufficient to constitute a threat) ).
[¶32] The evidence here is more compelling than that presented in either Ewing or Hill . Mr. Birch made hours of verbal threats against Mr. Johnson, and both Mr. and Mrs. *538 Johnson observed Mr. Birch shooting a firearm while making those threats. Therefore, the evidence supports the jury's conclusion that Mr. Birch "threatened to use a drawn deadly weapon" and committed an aggravated assault and battery against Mr. Johnson.
CONCLUSION
[¶33] The district court properly instructed the jury regarding the definition of "threatened to use" as defined in Wyoming law. While the district court abused its discretion when it admitted uncharged misconduct evidence at trial without first conducting a Gleason analysis, that error was harmless. Finally, the State presented sufficient evidence that Mr. Birch "threatened to use a drawn deadly weapon" against Mr. Johnson.
[¶34] Affirmed.

The State gave notice of its intent to use the November 2nd incident and the statements Mr. Birch made on November 1st to Mr. Leeper. On appeal, Mr. Birch takes issue only with the November 2nd incident.