Jim JOHNSTON, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–58.

Supreme Court of Wyoming.

Dec. 29, 1987.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Cheyenne; Wyoming Defender Aid Program: Gerald M. Gallivan, Director, and Dawn L. Howell, Student Intern, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen.; John W. Renneisen, Deputy Atty. Gen.; Terry L. Armitage, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, CARDINE, URBIGKIT, and MACY, JJ, and HANSCUM, DJ.

HANSCUM, District Judge.

This is an appeal from a conviction for aggravated assault and battery in violation of § 6-2-502(a)(iii), W.S.1977 (Cum.Supp. 1986),[1] brought under a claim of plain error

---

1. Section 6-2-502(a)(iii), W.S.1977 (Cum.Supp. 1986), provides:

"(a) A person is guilty of aggravated assault and battery if he:

under Rule 49(b), Wyoming Rules of Criminal Procedure.[2] Appellant contends that the trial court committed plain error by giving two supplemental instructions further defining the term "threat" as an ingredient of the essential elements of the charged offense. The trial court gave the additional instructions in response to specific questions raised by the jury during deliberations.

Appellant's knife-wielding was the apparent focus of the jury's attention during various stages of deliberations when two questions pertaining to the implications of the term "threat" were posed:

> Question One: "Does the presence of weapon in hand constitute a threat to use it?"

In response and without objection, the trial court further instructed:

> "Whether there was a threat is a question of fact to be decided by the jury based upon all the circumstances of the case."

> Question Two: "Is threaten to use a weapon the same as threatened with a weapon?"

Again, the trial court responded without objection by further instructing:

> "A threat is an expression of an intention to inflict pain, injury, or punishment. It may be expressed by words or acts, or a combination of words and acts. Considering all of the circumstances of the case you must decide whether the defendant's words and acts amounted to an express or implied statement of his intention to use a drawn deadly weapon to inflict pain, injury, or punishment."

Affirming the conviction, we conclude that any defect in the judge's first instruction was cured in the giving of the second instruction; thus, no plain error is established and the evidence is sufficient to uphold the verdict.

\*    \*    \*    \*    \*    \*

> "(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another."

## FACTS

On the evening of June 5, 1986, nineteen-year-old Darren McDaneld arrived at LeRoy's Body Shop to talk to his uncle Jerry West. A conversation ensued between uncle and nephew about allegations by Uncle Jerry that Darren had taken a knife from him and that Darren was involved in selling knives to younger kids. Overhearing the conversation, LeRoy Hibbs, owner of the body shop, joined the discussion which by this time had become a heated argument. At some point in time, Darren produced a "butterfly" knife. He testified that the blade was not extended. LeRoy Hibbs testified that the blade extension mechanism had been activated as Darren produced the knife from his back pocket, at which time Hibbs knocked the knife out of Darren's hands and launched a fist attack against Darren's head and face.

Then appellant, Jim Johnston, who was observing the fray retrieved the knife, approached McDaneld and brandished the knife in the area of Darren's face and neck. Darren testified that Johnston nicked him in the throat with the knife and previously had threatened him with two sickle knives. Appellant denied that he nicked McDaneld's throat or that he previously had employed any other knives. Appellant contends that the only conceivable threatening conduct towards McDaneld was in the form of a question: "You like to play with knives?"

The jury, weighing the conflicting testimony, apparently believed McDaneld's version of the course of the events and returned a guilty verdict on the charge of aggravated assault and battery.

## LAW OF PLAIN ERROR

Since no objections were made to the supplemental instructions given by the trial court in response to the jury's questions during deliberations, this case must be de-

**2.** Rule 49(b), W.R.Cr.P., provides:

> "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

cided under the plain error doctrine. Rule 49, W.R.Cr.P. We frequently have had the occasion to consider the plain error doctrine which requires the application of a three-part test:

"'"* * * First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced. * * * "'" *Auclair v. State*, Wyo., 660 P.2d 1156, 1159 (1983), cert. denied 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 249 (quoting *Bradley v. State*, Wyo., 635 P.2d 1161, 1164 (1981)). See *Browder v. State*, Wyo., 639 P.2d 889 (1982)." *Larsen v. State*, Wyo., 686 P.2d 583, 584 (1984).

■ Here, the focus of the inquiry involves the jury's questions and the trial court's reaction to the inquiries, and the record is clear as to that dialogue. The second prong of the test also is met in this case. The answer to the first jury question constituted a violation of a clear rule of law; however, the corrective action taken by the trial court in its answer to the second question cured any denial of a substantial right, and no prejudice resulted. Accordingly, appellant cannot succeed under the "plain error" doctrine.

Appellant argues that the answer to question one, "Does the presence of weapon in hand constitute a threat to use it?" should have been "no." Appellant argues further that the trial court's response, in effect, informed the jury that they could find a constructive threat, and that the instruction eviscerated the plain language of the charged statute which states that "threatens to use" is an element of the offense. Quite correctly, appellant observes that this court has not had the occasion to construe the words "threatens to use" in § 6–2–502(a)(iii). We will take that opportunity in this appeal.

In contending that threatens to use "requires an actual threat not a constructive threat," appellant cites several cases and authorities:

"In *State v. Hentz*, 663 P.2d 476 (Wash. 1983), the Washington Supreme Court construed the words 'threatens to use' by giving it a plain and ordinary meaning. *Hentz* at 477. The Court reasoned that '[p]ointing a gun at someone is clearly "use" of that weapon, whereas "threat" is defined as the expression of an intention to inflict injury.' *Hentz* at 478.

"In *United States v. Baish*, 460 A.2d 38 (D.C.App.1983), the D.C. Appeals Court construed the word "threatens." It stated 'that a person "threatens" when she utters words, which are intended to convey her desire to inflict physical or other harm on any person or on property and these words are communicated to someone.' *Baish* at 42. See also, *State v. Keller*, 199 S.E. 620 (N.C.1938).

"In WEBSTER'S COLLEGIATE DICTIONARY 1228 (9th ed. 1984), threaten is defined as 'to utter threats against or * * * to give signs of warning of.' Use is defined as the 'act or practice of employing something.' WEBSTER'S at 1299. In BLACK'S LAW DICTIONARY 1327 (5th ed. 1979), threat is defined as a 'communicated intent to inflict physical or other harm on any person or on property.' Use is defined as an '[a]ct of employing everything, or state of being employed; * * *' BLACK'S at 1382."

■ We find appellant's authority on actual threat to be persuasive. We agree and we hold that the phrase "threatens to use" in § 6–2–502(a)(iii), W.S.1977 (Cum. Supp.1986), requires proof of an actual threat of physical injury during the act of employing a deadly weapon. It was error for the trial judge to insinuate in his answer to the question that factual circumstances would govern in determining if the (mere) presence of a weapon in hand could constitute a threat to use. It cannot. Proof of a required ingredient of an element of a criminal offense to be proved beyond a reasonable doubt cannot be aided by such an inference, presumption or insinuation of the kind contained in the trial court's reply.

■ Reversal of the conviction, however on the basis of this error is indicated only if all three prongs of the Larsen test are met. The trial court's answer to the second question removed all possibility of taint and prejudice possibly occasioned in the answer to the first question. Accordingly, when reading all the instructions together, as required by *Cullin v. State,* Wyo., 565 P.2d 445 (1971) and *Horn v. State,* Wyo., 554 P.2d 1141 (1976), the jury adequately and properly was informed of the essential law of the case.

Were it not for the saving effect of the trial judge's second instruction, this court might well find the necessary prejudice to reverse appellant's conviction. Drawing upon the axiom that words in statutes are to be given their plain and ordinary meaning, *Keller v. State,* Wyo., 723 P.2d 1244, 1246 (1986), the trial judge instructed the jury in the form of a dictionary definition of the term "threat" directly in response to the second jury entreaty to do so. After lengthy colloquy between the trial court and counsel grappling with the proper way to handle the jury's inquiry, the trial court without objection answered:

"A threat is an expression of an intention to inflict pain, injury, or punishment. It may be expressed by words or acts, or a combination of words and acts. Considering all of the circumstances of the case, you must decide whether the defendant's words and acts amounted to an express or implied statement of his intention to use a drawn deadly weapon to inflict pain, injury, or punishment."

We hold that this definition of "threat" is a proper statement of the law of aggravated assault and battery in the State of Wyoming. We also find, as a corollary ruling, that this second instruction mitigates any error or prejudice occasioned by the giving of the first instruction.

Furthermore, we have said that " * * * for an error to be regarded as harmful ' * * * there must be a reasonable possibility that in the absence of the error the verdict might have been more favorable to the defendant.' * * * " *Nimmo v. State,* Wyo., 603 P.2d 386, 395 (1979). Concededly,

whether prejudice resulted and whether the verdict would have been different are extremely difficult matters of proof—for we cannot divine the course of discussions during jury deliberations. Yet, in this case, we have some remarkable insights into the jury's thought processes in the context of the the issues surrounding the implications of the "threat" ingredient. Their very questions reveal a great deal about their struggle over the meaning of the term "threat" as it applied to this particular fact situation.

From this window into the minds of the jurors, it is clear that whatever efficacy or prejudice occasioned by the trial judge's answer to their first question, the struggle over the threat issue resurfaced in the second question. Apparently, not satisfied that the first answer resolved their dilemma, the jury again focused on the threat issue. As if "objecting" themselves to the trial court's attempt to resolve the issue in the answer to the first question, the jury returned to the subject, essentially advising the court that the first answer was insufficient and entreatied more assistance in dealing with the thorny threat issue. It appears the jury was saying, "(but judge,) Is threaten to use a weapon the same as threatened with a weapon?" At this point, the judge answered the question directly and as we have held, correctly. The guilty verdict ensued. Any prejudice resultant from the first dialogue was removed by the proper and thorough instruction on the identical focus of inquiry in the second dialogue. The prophylactic effect of the second instruction discounts any reasonable possibility that the jury reached a guilty verdict on account of the first erroneous instruction. As a result, no prejudice resulted from the giving of the first instruction. Upon the jury's request embodied in the second question, the trial court effectively corrected itself. Accordingly, appellant has failed to show plain error.

### SUFFICIENCY OF THE EVIDENCE

Finally, appellant raises a sufficiency of the evidence question on the issue of intent

to inflict pain, injury or punishment under the particular facts of this case. The second instruction defining "threat" requires that there be sufficient evidence on this issue. Not only, as we have held, is the definition of threat correct, but it also becomes the law of the case, *Hopkinson v. State*, Wyo., 632 P.2d 79, 170 n. 43 (1981), against which the sufficiency of the evidence must be tested under standards articulated in *Abeyta v. State*, Wyo., 705 P.2d 330 (1985).

In *Dangel v. State*, Wyo., 724 P.2d 1145, 1148 (1986), recently approved in *Capshaw v. State*, Wyo., 737 P.2d 740, 744 (1987), this court articulated the standard of review when the sufficiency of the evidence is raised in a criminal case.

" ' "[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict. *Broom v. State*, Wyo., 695 P.2d [640] 646 (1985)." *Aden v. State*, Wyo., 717 P.2d 326 (1986).' "

In *Broom v. State*, Wyo., 695 P.2d 640, 642 (1985), we said:

" * * * We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence. [Citations.] The factfinder—in this case, a jury—did that. * * * "

Ruling on the motion for judgment of acquittal premised on the conflicting evidence in this case, the trial judge properly denying the motion, announced its adherence to this axiomatic rule by stating: "If the jury believes the boy's version of the events, the state has made its case. If they believe Mr. Johnston's, I'm sure they'll acquit him. That's what juries are for."

Specifically, appellant here challenges the sufficiency of the evidence on the element of threat as requiring intent to inflict pain, injury or punishment. In this case the evidence is conflicting. Darren McDaneld, the victim, testified that appellant initially threatened him with two sickle-shaped knives, holding them against his throat, waving them within a couple of inches of his face and asking him, "Do you like to play with knives?" Then LeRoy Hibbs resumed his fist attack against McDaneld, allowing appellant to retrieve the victim's knife from the back of the pick-up and returned with the knife "working it in his hands," opening and closing the butterfly knife and holding it against McDaneld's throat. McDaneld further testified that he suffered a nick on his throat during the incident. Deputy Sheriff Wendleboe observed the nick on McDaneld's throat during his investigation. Jeannie Renard, the victim's mother, testified that she arrived at the scene and observed appellant holding the knife "really close to Darren's face." Mrs. Renard observed the nick on her son's throat and blood on the neck where he had been cut. Asked if Darren was acting in an aggressive way, his mother responded, "He acted scared * * * he was just scared." Even LeRoy Hibbs testified that he felt threatened by having a knife pointed at him earlier in the affray.

Appellant and LeRoy Hibbs testified that McDaneld previously had brandished the butterfly knife during the argument over ownership of knives. They testified that McDaneld flipped open the knife and pointed it at them. McDaneld's testimony is in direct contradiction. Appellant denied holding two sickle knives to McDaneld's throat or ever nicking him. Appellant testified that he always held the knife, which he admittedly retrieved from the truck "by the blade," insinuating that his waving of the knife in any manner was devoted to the purpose of dissuading McDaneld from playing with knives. Again, McDaneld testified to the contrary.

To illustrate the scene portrayed to the jury, the evidence viewed in a light most favorable to the state showed: Appellant was a forty-three-year old, 6'3" man, weighing 245 pounds, towering over McDaneld, a nineteen-year-old, 5'11" boy, weighing 155 pounds; "working," i.e., opening and closing, the butterfly knife as he approached within inches of the boy's throat; nicking the boy; only to be interrupted in the further employment of the knife by the

advent of McDaneld's mother onto the scene.

Under these circumstances, not only could the jury properly have inferred a threatening employment of the drawn knife as an expression of an intention to inflict pain and injury, but also as an accomplishment of that expression as manifested by the nicked and bloodied throat. These were reasonable inferences that the jury was entitled to draw from the evidence before it. Again, it is not this court's function to re-weigh the evidence or re-examine the believability of the witnesses, but only to declare sufficiency or lack of sufficiency of the evidence. In this case we declare sufficiency.

Affirmed.