**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 12 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN LEROY JENKINS, SR.,
also known as Kiven Leroy Kohler,

Defendant-Appellant.

No. 00-8043
(D.C. No. 99-CR-0105)
(D. Wyo.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Kevin Leroy Jenkins appeals his convictions for one count of possession of a sawed-off shotgun, in violation of 26 U.S.C. §§ 5841, 5845 and 5861(d), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), contending the district court erred in denying his motion to suppress evidence with respect to these charges. Defendant also appeals his convictions for three counts of aggravated assault, in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii) and 18 U.S.C. § 1153, and three counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), contending the evidence presented at trial was insufficient to convict him of these charges. Defendant does not appeal his convictions for another three counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Motion to Suppress

Defendant, who is an Indian, first contends that a Bureau of Indian Affairs (BIA) law enforcement officer, Sergeant William Warren, illegally stopped the vehicle in which he was a passenger and illegally arrested him because the stop and arrest occurred outside of the Wind River Indian Reservation (WRIR), and, therefore, outside of the officer's jurisdiction. Defendant contends that the shotgun discovered during the subsequent search of the vehicle should have been suppressed as a result of the unlawful stop and arrest. "When reviewing an order

granting or denying a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous, and consider the evidence in the light most favorable to the district court's determination." *United States v. Doyle*, 129 F.3d 1372, 1375 (10th Cir. 1997). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law that we review *de novo*. *Id*.

## A. Background

Shortly after midnight on June 19, 1998, Sergeant Warren, a BIA law enforcement officer working for the Wind River Agency Police Department, received a report of shots being fired at the residence of the Addison family, located in the WRIR. He went to the home, where witnesses told Sergeant Warren that a car drove up to the home, defendant got out, fired a gun into the rear window of Mr. Addison's car, breaking it, and then aimed the weapon up at a bedroom window in which the Addisons' daughter was standing. When the daughter ducked down, defendant got into the car and left. Witnesses described the car and pointed out a spent shotgun shell lying in the street. Sergeant Warren knew that defendant had previously been convicted of a felony and that it was a federal offense for him to possess a firearm.

While Sergeant Warren was investigating this incident, a police dispatcher informed him that a Ms. Sherry Duran had just reported that defendant had driven

off in her vehicle and she wanted it returned. This was not a report of a stolen vehicle, but was described as an "attempt to locate." The car described by the Addison family was similar to Ms. Duran's vehicle. Sergeant Warren went to Ms. Duran's home. She told him who might be riding with defendant in the car, including a Ms. April Miller. Sergeant Warren told her the vehicle may have been involved in a shooting incident and Ms. Duran gave him permission to search the car if it was located.

Sergeant Warren began to look for the vehicle, but he came upon a runaway juvenile. He transported the juvenile to the police department in the nearby town of Riverton, which is located in Fremont County, Wyoming. After leaving the Riverton Police Department, he was driving on the highway back to the WRIR when he recognized Ms. Duran's car driving in front of him. A woman, later identified as April Miller, was driving. Sergeant Warren followed the car and radioed for assistance from both the Riverton Police Department and the BIA. Sergeant Warren testified at the suppression hearing that the driver voluntarily pulled the car off to the side of the road, that he pulled in behind the car, then activated his emergency lights and waited for assistance. R. Vol. II, at 15-16. In his initial report of the stop, however, Sergeant Warren did not indicate that the driver voluntarily pulled over, but stated instead that he stopped the vehicle.

The district court made no finding as to whether the stop was voluntary and consensual.

The vehicle stopped 300 feet short of the bridge over the Wind River into the WRIR. [1] When Sergeant Lee of the Riverton Police Department arrived, Sergeant Warren asked the driver, Ms. Miller, to get out of the car. She did so, handing the keys to Sergeant Warren. Two men and one woman remained in the car. Sergeant Warren told Ms. Miller that the police were looking for Kevin Jenkins and she eventually admitted he was in the front passenger seat. Sergeant Warren went to the passenger door, asked defendant to step out, arrested him and placed him in his patrol car. Ms. Miller then told Sergeant Warren that the

---

[1]     Defendant's argument that Sergeant Warren lacked jurisdiction to effect the stop and arrest rests on his claim that these events took place outside of the WRIR and, therefore, outside of the officer's jurisdiction as a BIA law enforcement officer. The district court stated its belief that the exterior boundaries of the WRIR encompass the area in which the vehicle was stopped. R. Vol. II, at 94. Sergeant Warren also testified that it was his belief that Riverton was within the exterior boundaries of the WRIR. However, neither the government nor the defendant presented any competent evidence establishing whether the area was in or out of the WRIR boundaries. The government states that the jurisdictional status of the area in question is unclear, Appellee's Br. at 9 n.2, and appears to concede that the vehicle was stopped just outside of the WRIR, _id_. at 8-9.

We assume therefore, purely for the sake of argument, that the vehicle was stopped outside the WRIR reservation boundary. We note, however, that the proponent of a motion to suppress generally bears the burden of proof, _United States v. Moore_, 22 F.3d 241, 243 (10th Cir. 1994), and that defendant did not present any evidence in support of his claim that the area was, in fact, outside of the WRIR.

shotgun was in the car. Police ordered the other passengers out of the car. Ms. Duran, who had been notified her car had been located, arrived at the scene and again gave the officers permission to search the vehicle. During the search, Sergeant Lee discovered a shotgun between the front seats of the car. Defendant was arrested for the tribal offenses of discharge of a firearm and malicious mischief.

## B. Analysis

Defendant does not dispute that there was probable cause to stop the vehicle or probable cause to arrest him. Rather, he contends that Sergeant Warren lacked jurisdiction to stop the vehicle and arrest him because these events took place outside of the WRIR. He relies on *Ross v. Neff*, in which we held that a warrantless arrest made outside an officer's jurisdiction is analogous to a warrantless arrest made without probable cause. 905 F.2d 1349, 1353-54 (10th Cir. 1990). Defendant lacks standing to contest the search directly because he was a passenger in the vehicle. *See United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir. 1995). Nevertheless, a passenger does have standing to "challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, [he] has no possessory or ownership interest in either the vehicle in which [he] is riding or in its contents." *Id*. at 1164. If the physical evidence found in the vehicle

was the fruit of the defendant's unlawful detention, it must be suppressed. *Id*. at 1164-65. Defendant contends that, but for Sergeant Warren's unlawful stop of the vehicle, he would not have been arrested, the car would not have been searched and the firearm would not have been discovered.

The government first contends defendant cannot contest the stop because Ms. Miller voluntary pulled over. However, we are unable to make any determination as to whether the traffic stop was consensual. Sergeant Warren's testimony that Ms. Miller voluntarily pulled over was placed at least in some doubt by his written report, made at the time of the arrest, stating that he had stopped the vehicle. The district court made no findings with respect to this conflicting evidence, and we may not resolve this issue in the first instance. *See United States v. Guzman*, 864 F.2d 1512, 1521 (10th Cir. 1988) (voluntariness and credibility are findings of fact to be made by the district court at a suppression hearing) (*overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995)); *Sabol v. Snyder*, 524 F.2d 1009, 1011 (10th Cir. 1975) ("It is obviously not the function of the appellate court to try the facts or substitute for the trial court in the determination of factual issues.").

The government next contends that Sergeant Warren had authority under 25 U.S.C. § 2803(3) to arrest defendant for the federal crime of being a felon in possession of a firearm. Section 2803(3) provides that BIA law enforcement

officers may make a warrantless arrest "for an offense committed in Indian country if . . . the offense is a felony and the [BIA officer] has reasonable grounds to believe that the person to be arrested has committed, or is committing, the felony." It is undisputed that at the time of the arrest Sergeant Warren had reasonable grounds to believe defendant had violated the federal felony offense of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and, indeed, he listed the felon-in-possession charge as a possible offense on a report he signed the day after the arrest. Nevertheless, it is also undisputed that Sergeant Warren only arrested defendant for tribal offenses, R. Vol. II at 21, and that defendant was not charged with the felon-in-possession offense until more than a year after this arrest. Because Sergeant Warren did not arrest defendant for a federal felony, we decline to make any determination as to whether the arrest was authorized under 25 U.S.C. § 2803(3).

We agree, however, with the government's next contention, that Sergeant Warren had jurisdiction and authority under Wyoming state law to stop the vehicle and arrest defendant because he was a special deputy sheriff of Fremont County. Sergeant Warren testified he took the oath as a special deputy sheriff and a Fremont County special deputy appointment list was introduced into evidence listing him as having been appointed as a special deputy sheriff. The sheriff's signature line was unsigned on the appointment papers. The government

presented evidence, however, that the Fremont County sheriff considered Sergeant Warren to have been appointed as a special deputy and that the lack of the sheriff's signature on the form was an oversight. [2] Based on this evidence, the district court made a finding of fact that Sergeant Warren was a special deputy sheriff of Fremont County. We conclude that the district court's finding that Sergeant Warren was a special deputy sheriff of Fremont County is not clearly erroneous. Therefore, he was not acting outside of his lawful jurisdiction when he stopped the vehicle and arrested defendant.

Moreover, defendant does not contest the district court's finding that exigent circumstances existed to justify the stop and arrest, nor do we conclude that finding was clearly erroneous. Thus, even if Sergeant Warren had been acting outside of his jurisdiction, the stop and arrest would nevertheless be justified under *Ross v. Neff*, which recognized that exigent circumstances could justify an arrest outside an officer's jurisdiction. 905 F.2d at 1354; *see also United States v. Green*, 178 F.3d 1099, 1107 (10th Cir. 1999) (holding that Fourth Amendment permits warrantless arrests where officer has probable cause and

---

[2] Defendant notes that this evidence was the hearsay testimony of an FBI agent who spoke to the Fremont County sheriff during a break in the suppression hearing. However, defendant did not object to this testimony at the time of the hearing and it is well established that hearsay evidence is admissible at suppression hearings. *United States v. Merritt*, 695 F.2d 1263, 1269-70 (10th Cir. 1982).

makes the arrest within his jurisdiction *or* under exigent circumstances).  Because

the stop and the arrest were lawful, the district court correctly denied defendant's

motion to suppress the firearm discovered during the search of the vehicle.

## II.  Aggravated Assault

Defendant was convicted of three counts of aggravated assault by

"threaten[ing] to use a drawn deadly weapon on another" in violation of

Wyo. Stat. Ann. § 6-2-502(a)(iii), made applicable to him pursuant to the Indian

Major Crimes Act, 18 U.S.C. § 1153.  The parties agree that Wyoming law

applies pursuant to § 1153(b), which provides that the assimilated crime is to be

punished by reference to state law if no federal statute defining the crime exists.

Defendant challenges his aggravated assault convictions, and the three 18 U.S.C.

§ 924 convictions predicated on these convictions, claiming that the evidence

was insufficient to convict him.

We review *de novo* the sufficiency of the evidence supporting a conviction.

*United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001).

In reviewing his sufficiency of the evidence claims, we must ask only
whether taking the evidence--both direct and circumstantial, together with the
reasonable inferences to be drawn therefrom--in the light most favorable to the
government, a reasonable jury could find [the defendant] guilty beyond a
reasonable doubt. . . . We will only overturn a jury verdict if no reasonable juror
could have reached the disputed verdict. . . .  In a sufficiency challenge, we
review the record as a whole and consider the collective inferences reasonably
drawn therefrom.  Where conflicting evidence exists, we do not question the
jury's conclusions regarding the credibility of witnesses or the relative weight of

evidence. When a record allows for conflicting findings, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution.

*Id*. at 1311-12 (quotation marks, citations and alterations omitted).

## A. Background

With respect to the first count of aggravated assault, the government presented evidence that defendant had been having an argument with his sixteen-year old cousin, Wallace Jenkins, when defendant walked toward Wallace with a gun in his hand, tripped Wallace, knocking him to the floor, then stood above him and held a gun to his head. Wallace saw defendant put the gun to his head and covered his head with his arms, but heard defendant cock the weapon and heard a shotgun shell fall out and hit the floor near him. Defendant held the cocked gun to his cousin's head for a few minutes. Wallace testified that this was not a game, that defendant was angry at him, and that he cried after defendant let him up.

As to the second count, the government presented evidence that defendant got into an argument with his sister, Lisa, and knocked her to the ground, then straddled her and pointed a gun towards her head, fired one round from the gun approximately five feet from her head, and attempted to fire a second shot, though the gun failed to fire. Defendant's shot was within Lisa's arm-length reach and was close enough to make her ears ring. A witness to this incident testified that Lisa was very upset after this incident.

The third count relates to the incident at the Addison home. After shooting out the rear window of the family's car with a sawed-off 12 gauge shotgun, defendant immediately reloaded his weapon and aimed it up at the Addison's daughter, Fatima, who was standing in her bedroom window. The government presented evidence that defendant had been in a previous altercation with one of the Addison family members and was angry at the family. Fatima Addison testified she heard a car pull up in the driveway, looked out her window and saw defendant fire the shotgun at the car, heard the car window break, saw him reload the shotgun and aim it at her. She testified she was scared, she "kind of freaked out," and screamed to her parents. R. Vol. 3 at 95-97. A witness testified defendant did not just swing his weapon in Fatima's direction, but held the shotgun in both hands and aimed it at her. The witness testified that Fatima dropped below the window and defendant left the scene.

## B. Analysis

The Wyoming Supreme Court has held "that the phrase 'threatens to use' in § 6-2-502(a)(iii) . . . requires proof of an actual threat of physical injury during the act of employing a deadly weapon." *Johnston v. State*, 747 P.2d 1132, 1134 (Wyo. 1987). The court held that proof of the mere presence of a weapon is insufficient to satisfy the "threatens to use" element of the aggravated assault crime. *Id*. at 1134. It is undisputed that defendant never verbally threatened

-12-

anyone in the three incidents for which he was charged with aggravated assault. He claims, therefore, that the evidence was insufficient to convict him because there is no proof of an "actual threat of physical injury."

We disagree. It is clear that under Wyoming law, a threat need not constitute an express verbal threat, and that a threat for purposes of § 6-2-502(a)(iii) may be implied and may be expressed simply by actions. The Wyoming Supreme Court in *Johnston* ruled that the following jury instruction is a proper definition of the term "threat" in the aggravated assault statute:

> A threat is an expression of an intention to inflict pain, injury, or punishment. It may be expressed by words *or acts*, or a combination of words and acts. Considering all of the circumstances of the case, you must decide whether the defendant's words and acts amounted to an express *or implied* statement of his intention to use a drawn deadly weapon to inflict pain, injury, or punishment.

747 P.2d at 1135 (emphasis added). The Wyoming Supreme Court upheld a conviction in *Cox v. State* for aggravated assault under § 6-2-502(a)(iii) based solely on implied actions where the defendant advanced toward the victim, slashing back and forth with a knife, without uttering any verbal threat whatsoever. 829 P.2d 1183, 1186 (Wyo. 1992) (holding that aggravated assault statute is a general intent crime, requiring only that intent which may be inferred from doing the act which constitutes the offense charged, such as slashing back and forth with a hunting knife).

-13-

Here, defendant was bigger than all of his victims, two women and his sixteen-year old cousin. In each instance, there was evidence that defendant was angry at his victim when he aimed a deadly weapon at or very near his victim. In each instance, defendant did not simply aim the weapon at his victim, but also took affirmative menacing actions. In the first case, he cocked the weapon while holding it next to his victim's head, causing a shell to fall out, and held the cocked weapon next to the victim's head for several minutes. In the second case, defendant fired his weapon so close to the victim's head it made her ears ring and attempted to fire it near her a second time. In the third case, defendant shot out the window of the victim's family car in the middle of the night immediately before reloading and aiming his shotgun directly at the victim. In each instance, the victim was scared and upset by defendant's actions. *See Gunderson v. State*, 925 P.2d 1300, 1304 (Wyo. 1996) (noting that victim's fear is evidence of defendant's threat). Accordingly, we hold that the evidence, viewed in the light most favorable to the government, provides an adequate basis from which a reasonable jury could find that defendant's actions with respect to each count of aggravated assault constituted an implied intention to use a drawn deadly weapon to inflict pain, injury or punishment.

The government's unopposed motion to supplement the record is GRANTED.  The judgment is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

-15-