# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 17

### OCTOBER TERM, A.D. 2021

### February 1, 2022

PHILLIP D. COTNEY,

Appellant
(Defendant),

v.                                                      S-21-0111

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Crook County*
The Honorable Stuart S. Healy III, Judge

*Representing Appellant:*
> Office of the State Public Defender:  Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.  Argument by Ms. Cooper.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.  Argument by Ms. Mercer.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Phillip D. Cotney was convicted by a jury of aggravated assault and battery and misdemeanor interference with a peace officer. He claims there was insufficient evidence at trial to support his aggravated assault and battery conviction and he was denied his right to a speedy trial under Rule 48 of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.) and the United States and Wyoming Constitutions. We affirm.

## ISSUES

[¶2]    Mr. Cotney raises two issues, which we restate as follows:

1. Was there sufficient evidence at trial to support Mr. Cotney's aggravated assault and battery conviction for threatening to use a drawn deadly weapon on another person?

2. Was Mr. Cotney denied his right to a speedy trial?

## FACTS

[¶3]    On July 24, 2019, Officer Welchie Patterson of the Sundance Police Department saw Mr. Cotney sitting at a picnic table outside a local bar. Officer Patterson knew there was an active warrant for Mr. Cotney's arrest for failure to pay child support. After confirming the existence of the warrant with dispatch, Officer Patterson approached Mr. Cotney and told him there was an active warrant for his arrest and he was going to arrest him. Mr. Cotney became angry, jumped up from the picnic table, drew a knife out of his right rear pants pocket, pulled the blade out, and said he was not going back to jail. He advanced toward Officer Patterson with the knife before retreating into the street. Officer Patterson drew his gun and requested backup officers using the police radio attached to his person.

[¶4]    While waiting for backup officers to arrive, Officer Patterson kept his gun pointed at Mr. Cotney and made multiple demands for Mr. Cotney to drop the knife. Mr. Cotney refused. Holding the knife in his right hand down by his side, he repeatedly told Officer Patterson he was not going back to jail. When the first backup officer arrived on scene, Mr. Cotney was still holding the knife down by his side and refusing to obey Officer Patterson's commands to drop it. Eventually, Officer Patterson told Mr. Cotney that if he put the knife away, he would put his gun away. After Mr. Cotney closed the blade and put the knife back in his right rear pants pocket, Officer Patterson re-holstered his gun. Soon thereafter, a second backup officer arrived. Mr. Cotney told that officer to "back off" and moved his hand toward his right rear pants pocket. Officer Patterson ordered him not to remove the knife from his pocket. The officers arrested Mr. Cotney and recovered the knife from his pocket.

1

[¶5]    Two days later, on July 26, 2019, the State charged Mr. Cotney with aggravated assault and battery, felony interference with a peace officer, and misdemeanor interference with a police officer.  Although a preliminary hearing was originally scheduled for August 5, 2019, Mr. Cotney moved to continue the hearing and ultimately waived his right to a preliminary hearing.  As a result, the criminal case was not bound over to the district court until August 26, 2019.  In the meantime, in a separate case, the district court found Mr. Cotney in civil contempt of court for failure to pay child support and ordered him to be held in the Crook County Detention Center until he paid $8,216.60 in back child support.

[¶6]    On September 16, 2019, Mr. Cotney was arraigned in the criminal matter and pled not guilty to all three charges.  The district court scheduled a pretrial conference for December 10, 2019.

[¶7]    On December 9, 2019, Mr. Cotney filed a motion to stay the proceedings to undergo a competency evaluation.  *See* Wyo. Stat. Ann. § 7-11-303 (LexisNexis 2021).  The district court granted the motion the same day.  On January 27, 2020, the Wyoming State Hospital filed its forensic evaluation finding Mr. Cotney competent to proceed to trial.  On February 6, 2020, the court held a status conference concerning the forensic evaluation.  Mr. Cotney and the State did not object to the Wyoming State Hospital's competency finding, and neither party requested a second competency evaluation.  The court found Mr. Cotney competent and lifted the stay.  It held a pretrial conference and scheduled Mr. Cotney's trial for March 24, 2020.

[¶8]    Subsequently, the district court continued the trial twice due to the COVID-19 pandemic, first from March 24, 2020, to June 1, 2020, and then from June 1, 2020, to August 27, 2020.  A two-day jury trial was held on August 27 and 28, 2020.  The jury found Mr. Cotney not guilty of felony interference with a peace officer but guilty of aggravated assault and battery and misdemeanor interference with a peace officer.  The district court sentenced him to a total term of 4-7 years imprisonment.  Mr. Cotney timely appealed.

**DISCUSSION**

### A.  Sufficiency of the Evidence

[¶9]    Our standard of review for sufficiency of the evidence arguments is well-established:

> "This Court examines the evidence in the light most favorable to the State.  We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it.  We also

disregard any evidence favorable to the appellant that conflicts with the State's evidence."

*Birch v. State*, 2018 WY 73, ¶ 25, 421 P.3d 528, 536 (Wyo. 2018) (quoting *Jordin v. State*, 2018 WY 64, ¶ 8, 419 P.3d 527, 530 (Wyo. 2018), and *Thompson v. State*, 2018 WY 3, ¶ 14, 408 P.3d 756, 761 (Wyo. 2018)). In applying this standard,

> "We do not consider 'whether or not the evidence was sufficient to establish guilt beyond a reasonable doubt, but [instead] whether or not the evidence could reasonably support such a finding by the factfinder.' *Hill v. State*, 2016 WY 27, ¶ 13, 371 P.3d 553, 558 (Wyo. 2016) (citing *Levengood v. State*, 2014 WY 138, ¶ 12, 336 P.3d 1201, 1203 (Wyo. 2014)). 'We will not reweigh the evidence nor will we re-examine the credibility of the witnesses.' *Hill*, . . . ¶ 12, 371 P.3d at 558 (citation omitted). We review the sufficiency of the evidence 'from this perspective because we defer to the jury as the fact-finder and assume [it] believed only the evidence adverse to the defendant since [it] found the defendant guilty beyond a reasonable doubt.' *Oldman* [*v. State*], 2015 WY 121, ¶ 5, 359 P.3d [964,] 966 [(Wyo. 2015)]."

*Mraz v. State*, 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016) (quoting *Bean v. State*, 2016 WY 48, ¶ 45, 373 P.3d 372, 387 (Wyo. 2016)).

[¶10] Mr. Cotney was convicted of aggravated assault and battery under Wyo. Stat. Ann. § 6-2-502(a)(iii) (Lexis Nexis 2021), which states: "A person is guilty of aggravated assault and battery if he . . . [t]hreatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another[.]" The "threatens to use" element of § 6-2-502(a)(iii) "requires proof of an actual threat of physical injury during the act of employing a deadly weapon." *Johnston v. State*, 747 P.2d 1132, 1134 (Wyo. 1987). "[T]he mere presence of a weapon in hand is insufficient to satisfy the 'threatens to use' element." *Hill*, ¶ 15, 371 P.3d at 559 (citing *Johnston*, 747 P.2d at 1134, and *Gunderson v. State*, 925 P.2d 1300, 1304 (Wyo. 1996)). "'A threat [under § 6-2-502(a)(iii)] is an expression of an intention to inflict pain, injury, or punishment. It may be expressed by words or acts, or a combination of words and acts.'" *Hill*, ¶ 15, 371 P.3d at 559 (quoting *Johnston*, 747 P.2d at 1135). *See also, Thompson*, ¶ 16, 408 P.3d at 761.

[¶11] Mr. Cotney argues the trial evidence was insufficient to show he threatened to use a drawn deadly weapon on another person. He admits he was holding a drawn deadly weapon (the knife) but claims he did not threaten the officers with it because he made no

verbal threats or threatening physical gestures toward the officers. Rather, he backed away from Officer Patterson and held the knife down by his side.

[¶12] Viewing the evidence in the light most favorable to the State, there was sufficient evidence by which the jury could reasonably find Mr. Cotney threatened to use a drawn deadly weapon on Officer Patterson. Officer Patterson testified that when he approached Mr. Cotney and told him he was going to arrest him, Mr. Cotney became angry, jumped up from his seat, drew a knife out of his pocket, pulled the blade out, and said he was not going back to jail. He also testified Mr. Cotney advanced toward him with the knife prior to retreating into the street. Once in the street, Officer Patterson made repeated demands for Mr. Cotney to drop the knife. Mr. Cotney refused, holding the knife down by his side and telling Officer Patterson numerous times that he was not going back to jail. Officer Patterson captured his interaction with Mr. Cotney in the street with his body camera.[1] The State played a video of the encounter for the jury at the trial. The video shows a visibly angry Mr. Cotney holding the knife down by his side, refusing to heed Officer Patterson's commands to drop the knife, and telling Officer Patterson numerous times he was not going back to jail. At trial, Mr. Cotney admitted he did not intend to " go[] back to jail [that day]. [The officers were] going to have to shoot [him]."

[¶13] Mr. Cotney argues he did not make any physical threatening gestures with the knife but rather held it down by his side. This argument ignores Officer Patterson's testimony that Mr. Cotney advanced toward him with the knife before retreating into the street. In any event, a defendant may threaten to use a drawn deadly weapon on another person without pointing the weapon toward the person. In *Hart*, the defendant went to his ex-wife's parents' home and ordered her father to let him in the house. *Hart v. State*, 2003 WY 12, ¶¶ 5-6, 62 P.3d 566, 568-69 (Wyo. 2003). When her father told him to go home, the defendant pulled a gun out of the back of his pants, pointed it upward, and held it in front of a window so her father could see it. *Id.*, ¶ 6, 62 P.3d at 569. The defendant argued these actions were insufficient evidence establishing he threatened to use a drawn deadly weapon. *Id.*, ¶ 8, 62 P.3d at 569. We disagreed, stating:

> Viewed in a light most favorable to the State, the facts show that Hart went to the front door of [his ex-wife's parents'] home and told [her father], "you better let me in." To reinforce this demand, Hart held up his handgun for [the father] to see. Clearly, this is more than mere presence of a weapon in Hart's hand. Instead, given Hart's demands and his display of a

---

[1] Officer Patterson's body camera was not turned on when he approached Mr. Cotney because he did not expect Mr. Cotney to become confrontational. According to Officer Patterson, he had arrested Mr. Cotney twice in the past for failure to pay child support and Mr. Cotney "was very cooperative and polite and cordial." Officer Patterson activated the camera "shortly after [Mr. Cotney] jumped up and displayed the [knife]," but the camera "takes a few seconds to warm up." As a result, the camera did not begin recording until after Mr. Cotney had retreated to the street.

4

> deadly weapon to the man resisting the demands, we are
> satisfied that a jury could rationally conclude that Hart made
> an actual threat to use a drawn deadly weapon on [the father].

*Id.*, ¶ 10, 62 P.3d at 569-70. The same is true here. While holding the knife down by his side, Mr. Cotney told Officer Patterson, who was there to arrest him, that he was not going back to jail. His display of the knife while insisting he was not going back to jail to the person who was there to arrest him is sufficient evidence for a jury to rationally conclude he "threatened to use" the knife on Officer Patterson.

[¶14] Mr. Cotney did not expressly state he was going to use the knife to hurt Officer Patterson. The lack of a direct verbal threat, however, is not determinative. *Hill*, ¶ 17, 371 P.3d at 559 ("The lack of a verbal threat does not necessarily defeat a charge of aggravated assault."). "A threat to use a drawn deadly weapon may be proven solely by a defendant's actions or may be proven by words, or a combination of words and actions." *Id.* (citing *Johnston*, 747 P.2d at 1133). *See also, Pickering v. State*, 2020 WY 66, ¶ 92, 464 P.3d 236, 262-63 (Wyo. 2020) (citations omitted). In this case, Mr. Cotney's words and actions—drawing his knife when Officer Patterson told him he was going to be arrested, advancing toward Officer Patterson with the knife, and saying he was not going back to jail while holding the knife down by his side—demonstrated his intent to use the knife to inflict pain or injury on Officer Patterson.

[¶15] Mr. Cotney argues the fact the officers testified they felt threatened by him because he had a knife is irrelevant. Generally, in a § 6-2-502(a)(iii) prosecution, "'[w]e are not concerned with the *subjective reaction* of the victim[]'" because "[t]he victim's response, injury, or perception of threat is not an element of the crime . . . ." *Hill*, ¶ 30, 371 P.3d at 562 (emphasis added) (quoting *Levengood*, ¶ 19, 336 P.3d at 1205). Our above analysis is based on Mr. Cotney's actions, not the officers' subjective reactions to them.

[¶16] Finally, Mr. Cotney attempts to distinguish his actions from those in other cases where we have found there was sufficient evidence showing the defendant threatened to use a drawn deadly weapon. *See Pickering*, ¶¶ 4-6, 464 P.3d at 243-44 (defendant "flagged or pointed" a gun at some officers and shot six to twelve rounds at other officers); *Birch*, ¶¶ 27-32, 421 P.3d at 537-38 (defendant shot firearm for over four hours near the victims' home and shouted he was going to kill them); *Cooper v. State*, 2014 WY 36, ¶ 7, 319 P.3d 914, 918 (Wyo. 2014) (defendant brandished a gun and shot it into victim's car windshield; after the victim hit defendant with the car, defendant shot four more times); *Cox v. State*, 829 P.2d 1183, 1185 (Wyo. 1992) (defendant slashed back and forth with a hunting knife while advancing toward the officer); *Johnston*, 747 P.2d at 1136 (defendant opened and closed knife as he approached within inches of the victim's throat and nicked victim with knife). While the facts in each of these cases are different from those present here, they all involved a defendant, like Mr. Cotney, expressing through words and/or actions an intent to inflict pain or injury on another person with a drawn deadly weapon.

[¶17]   The evidence at trial was sufficient to show Mr. Cotney threatened to use a drawn deadline weapon on another person.

## B. *Speedy Trial*

[¶18]   In his statement of the issues, Mr. Cotney argues he was denied his right to a speedy trial under W.R.Cr.P. 48 and the United States and Wyoming Constitutions.  However, in his discussion of the issues, he does not press his Rule 48 argument.  Indeed, he does not mention the court's first continuance of the trial from March 24, 2020, to June 1, 2020, due to the COVID-19 pandemic, and he effectively concedes the time period during which the proceedings were stayed for his competency evaluation is excluded from the speedy trial deadline under Rule 48(b)(3)(A) and the district court's second continuance of the trial from June 1, 2020, to August 27, 2020, due to the pandemic was proper under Rule 48(b)(4)(B) and (C).  As a result, we limit our analysis to the constitutional question.  Our review is de novo.  *Crebs v. State*, 2020 WY 136, ¶ 13, 474 P.3d 1136, 1142 (Wyo. 2020) (quoting *Humphrey v. State*, 2008 WY 67, ¶ 18, 185 P.3d 1236, 1243 (Wyo. 2008)).

[¶19]   The Sixth Amendment to the United States Constitution and Article 1, § 10 of the Wyoming Constitution guarantee every criminal defendant a speedy trial.  *Humphrey*, ¶ 20, 185 P.3d at 1243.  *See also, Durkee v. State*, 2015 WY 123, ¶ 11, 357 P.3d 1106, 1110 (Wyo. 2015).  To determine whether a defendant has been deprived of his constitutional right to a speedy trial, we look to the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):  "'(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.'" *Crebs*, ¶ 14, 474 P.3d at 1142 (quoting *Webb v. State*, 2017 WY 108, ¶ 15, 401 P.3d 914, 921-22 (Wyo. 2017), and *Rhodes v. State*, 2015 WY 60, ¶ 17, 348 P.3d 404, 410 (Wyo. 2015)).

> "We conduct this analysis to determine whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial. No single factor is dispositive.  Instead, we consider the factors together and balanced in relation to all relevant circumstances. The State has the burden to prove delays in bringing the defendant to trial are reasonable and necessary."

*Fairbourn v. State*, 2020 WY 73, ¶ 42, 465 P.3d 413, 424-25 (Wyo. 2020) (quoting *Mathewson v. State*, 2019 WY 36, ¶ 57, 438 P.3d 189, 209 (Wyo. 2019)).

## 1. *Length of Delay*

[¶20] "[T]he constitutional 'speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs *first*.'" *Fairbourn*, ¶ 43, 465 P.3d at 425 (quoting *Webb*, ¶ 15, 401 P.3d at 921). "It 'continues until the defendant is convicted, acquitted or a formal entry is made on the record of his case that he is no longer under indictment.'" *Id.* (quoting *Ortiz v. State*, 2014 WY 60, ¶ 40, 326 P.3d 883, 893 (Wyo. 2014)). A total of 401 days elapsed between Mr. Cotney's arrest on July 24, 2019, and his conviction on August 28, 2020. "Although [n]o precise length of delay automatically constitutes a violation of the right to a speedy trial, a delay of over 365 days presumptively triggers review of the remaining *Barker* factors." *Mathewson*, ¶ 58, 438 P.3d at 210 (citations and internal quotation marks omitted). Because the length of the delay in this case exceeded one year, we consider the remaining *Barker* factors. *Tate v. State*, 2016 WY 102, ¶ 30, 382 P.3d 762, 769 (Wyo. 2016). However, because the delay in this case is only 36 days beyond "the bare minimum needed to trigger judicial examination of the claim," we do not weigh this factor in Mr. Cotney's favor. *Tate*, ¶ 31, 382 P.3d at 769. *See also, Webb*, ¶ 16, 401 P.3d at 922 (while the 396-day delay in bringing Mr. Webb to trial required consideration of the remaining *Barker* factors, the length of the delay did not weigh in Mr. Webb's favor because, *inter alia*, the delay only exceeded one year by 31 days).

### *2. Reason for Delay*

[¶21] Under the second *Barker* factor, we examine "who or what was responsible for the delay." *Tate*, ¶ 32, 382 P.3d at 769 (citing *Ortiz,* ¶ 42, 326 P.3d at 893). "'We weigh the delays caused by the State against those caused by the defendant, keeping in mind it is the State's burden to bring a defendant to trial in a timely manner and it must show that the delays were reasonable and necessary.'" *Webb*, ¶ 17, 401 P.3d at 922 (quoting *Durkee*, ¶ 16, 357 P.3d at 1112). "Delays caused by a defendant, such as requests for continuances, changes in defense counsel, and defendant filed pre-trial motions, may disentitle a defendant to speedy trial safeguards." *Id*. (citing *Castellanos v. State*, 2016 WY 11, ¶ 73, 366 P.3d 1279, 1300 (Wyo. 2016)). "Any delay caused by the defendant's counsel is also charged against the defendant." *Mathewson*, ¶ 59, 438 P.3d at 210 (citing *Castellanos*, ¶ 73, 366 P.3d at 1300). "With respect to the prosecution, '[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [State].'" *Ortiz*, ¶ 42, 326 P.3d at 893 (quoting *Berry v. State*, 2004 WY 81, ¶ 36, 93 P.3d 222, 232 (Wyo. 2004), and *Wehr v. State*, 841 P.2d 104, 112-13 (Wyo. 1992)). "However, circumstances such as overcrowded courts and their schedules are more neutral reasons for delay[] and should not be weighed as heavily against the State." *Webb*, ¶ 17, 401 P.3d at 922 (citation omitted).

[¶22] Mr. Cotney was arrested on July 24, 2019. He was not bound over to the district court until August 26, 2019, because he requested a continuance of the preliminary hearing and then ultimately waived his right to a preliminary hearing. This delay is attributable to him. *Fairbourn*, ¶ 46, 465 P.3d at 425.

7

[¶23] The second delay occurred as a result of Mr. Cotney obtaining a competency evaluation. This delay is neutral. *Webb*, ¶ 17, 401 P.3d at 922 ("'[D]elays attributable to competency evaluations fall into the "neutral" category in the *Barker* balancing test.'" (quoting *Castellanos*, ¶ 72, 366 P.3d at 1300)).

[¶24] Similarly, the delay caused by the district court's continuances of the trial due to the COVID-19 pandemic is neutral because neither Mr. Cotney nor the State caused the delay. Mr. Cotney admits the pandemic "was an extraordinary circumstance not attributable to either the State or Mr. Cotney and therefore more of a neutral reason." Nevertheless, he claims our March 18, 2020, and May 15, 2020, orders first recommending the suspension of all in-person proceedings until April 10, 2020, and then suggesting no jury trials take place prior to August 3, 2020, both provided an exception for "[p]roceedings necessary to protect constitutional rights of criminal defendants." *See* https://www.courts.state.wy.us/wp-content/uploads/2020/03/COVID-19-Order.pdf; https://www.courts.state.wy.us/wp-content/uploads/2020/05/COVID-19-OrderThirdAmend-05.15.2020.pdf. As a result, he claims this factor should not be "weighed as heavily" because bringing him to trial in a timely manner was ultimately the State's responsibility as he "could not bring himself to trial no matter how much he advocated for it and stressed the importance of it to him." Mr. Cotney's argument is confusing. Because this factor is neutral, it cannot be weighed heavily for or against either party.

[¶25] The delay in binding the case over to the district court is attributable to Mr. Cotney. The remaining delay is neutral. This factor weighs slightly against Mr. Cotney.

### 3. Defendant's Assertion of His Right to Speedy Trial

[¶26] "'Although a defendant is not required to assert his right to a speedy trial, the vigor with which the defendant asserted his right is an important consideration in determining the reasonableness of any delay.'" *Mathewson*, ¶ 63, 438 P.3d at 211 (quoting *Griggs v. State*, 2016 WY 16, ¶ 68, 367 P.3d 1108, 1130 (Wyo. 2016)) (other citation omitted). "A defendant's consistent assertion of his right weighs heavily in favor of the defendant, whereas less than vigorous assertions are given little weight." *Id.* (citing *Berry*, ¶ 45, 93 P.3d at 236, and *Campbell v. State*, 999 P.2d 649, 656 (Wyo. 2000)). It is undisputed that Mr. Cotney consistently asserted his right to a speedy trial throughout the district court proceedings. This factor weighs heavily in his favor.

### 4. Prejudice

[¶27] In determining whether Mr. Cotney was prejudiced by the delay, we consider: "(1) lengthy pretrial incarceration; (2) pretrial anxiety; and[] (3) impairment of the defense." *Ortiz*, ¶ 59, 326 P.3d at 896 (quoting *Berry*, ¶ 46, 93 P.3d at 237). Mr. Cotney claims he was prejudiced by the delay under the second and third factors. "[H]e has the burden to

8

demonstrate and substantiate such prejudice." *Mathewson*, ¶ 65, 438 P.3d at 211 (citing *Webb*, ¶ 23, 401 P.3d at 923-24).

[¶28]  Mr. Cotney claims he suffered anxiety because the continuances were outside his control, and he was dealing with other legal matters that needed his attention.  In particular, he asserts he "suffered anxiety as a result of this case as it was a continuation of the hassle . . . he was given over a child support order for a child he is adamant is not his."  "Pretrial anxiety 'is the least significant' factor and because a 'certain amount of pretrial anxiety naturally exists,' an appellant must demonstrate that he suffered 'extraordinary or unusual' pretrial anxiety."  *Mathewson*, ¶ 65, 438 P.3d at 211 (quoting *Webb*, ¶ 23, 401 P.3d at 923-24, and *Castellanos*, ¶ 88, 366 P.3d at 1303)).  "[A] bare assertion of anxiety will not suffice" to show prejudice.  *Ortiz*, ¶ 61, 326 P.3d at 896 (citation omitted).  While Mr. Cotney may have anxiety over being ordered to pay support for a child he claims is not his, he has not shown this anxiety was the result of the delay in this case, let alone that any anxiety was "extraordinary or unusual."  *Cf. Durkee*, ¶ 38, 357 P.3d at 1116 ("We note that other factors may have contributed to any anxiety and incarceration Mr. Durkee may have experienced, including his sentence for a different controlled substance violation and his abscondence from bond.").

[¶29]  Mr. Cotney also asserts his defense was impaired.  "The impairment of defense factor is the most serious because it impacts the defendant's ability to prepare his case and skews the fairness of the entire system."  *Webb*, ¶ 23, 401 P.3d at 923 (quoting *Castellanos*, ¶ 88, 366 P.3d at 1303, and *Durkee*, ¶ 37, 357 P.3d at 1116).  "Our inquiry for this prong of the prejudice analysis is whether the delay resulted in a loss of evidence or impaired the defense by the 'death, disappearance, or memory loss of witnesses for the defense.'"  *Castellanos*, ¶ 90, 366 P.3d at 1303 (quoting *Ortiz*, ¶ 62, 326 P.3d at 896).  "Speculation that presumably the witnesses' memories would be less helpful [because of the passage of time] does not establish prejudice."  *Fairbourn*, ¶ 59, 465 P.3d at 427 (citation omitted).  Mr. Cotney makes the bare assertion that "the longer it took to go to trial the less reliable witness testimony would become."  Such conclusory claim is not enough to show the delay in this case impaired his defense.  Moreover, his allegation is directly belied by the record.  There is no indication any of the witnesses' memories were impaired.  None of the witnesses indicated they could not remember, and the officers' testimony was consistent with the video of the encounter from Officer Patterson's body camera.

[¶30]  Because Mr. Cotney has not shown prejudice, the fourth *Barker* factor weighs "heavily against him."  *Mathewson*, ¶ 67, 438 P.3d at 212.

### 5. *Balancing of the Factors*

[¶31]  Because Mr. Cotney failed to demonstrate he was prejudiced by the delay, "the other three *Barker* factors must weigh heavily in his favor to establish a speedy trial violation."  *Id*. (emphasis omitted) (quoting *Castellanos*, ¶ 88, 366 P.3d at 1303).  Only one of the

*Barker* factors weighs heavily in Mr. Cotney's favor—he consistently asserted his right to a speedy trial. The remaining factors are either neutral or weigh against him. Because the delay in bringing Mr. Cotney to trial was not unreasonable, he was not denied his constitutional right to a speedy trial.

## CONCLUSION

[¶32]  There was sufficient evidence supporting Mr. Cotney's aggravated assault and battery conviction, and his constitutional right to a speedy trial was not violated. We affirm.